KEKER, VAN NEST & PETERS LLP
DAVID SILBERT - # 173128
dsilbert@keker.com
SHARIF E. JACOB - # 257546
sjacob@keker.com
KRISTEN E. LOVIN - # 293688
klovin@keker.com
TAYLOR REEVES - # 319729
treeves@keker.com
EMILY A. HASSELBERG - # 326990
ehasselberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff X CORP.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X CORP., a Nevada corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>ADEIA INC., a Delaware corporation;<br>ADEIA MEDIA LLC, a Delaware limited<br>liability company; and ADEIA GUIDES INC.<br>(f/k/a ROVI GUIDES INC.), a Delaware<br>corporation,<br><br>    Defendants. | Case No. 3:23-cv-06151<br><br>**COMPLAINT FOR DECLARATORY<br>JUDGMENT OF PATENT<br>NONINFRINGEMENT**<br><br><br>Date Filed:  November 28, 2023<br>Trial Date:  Not yet set |

Plaintiff X Corp. ("X") brings this action for declaratory judgment of patent noninfringement against Defendants Adeia Inc., Adeia Media LLC, and Adeia Guides Inc. (f/k/a Rovi Guides Inc.) (collectively, "Adeia") and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action arising under the Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*  X brings this action for a declaration that it does not infringe any claim of U.S. Patent Nos. 10,694,137; 10,951,563; 11,288,582; and 11,756,071 (collectively "the Declaratory Judgment Patents").

## PARTIES[1]

2.      X is a corporation duly organized and existing under the laws of the State of Nevada, with a principal place of business located at 1355 Market Street, San Francisco, California.  X was formerly known as Twitter, Inc.

3.      Adeia Inc. is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at 3025 Orchard Parkway, San Jose, California.

4.      Adeia Media LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 3025 Orchard Parkway, San Jose, California.

5.      Adeia Guides Inc. (f/k/a Rovi Guides Inc.) is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business at 3025 Orchard Parkway, San Jose, California.

### Defendants' Corporate Predecessors

6.      Rovi Corporation ("Rovi") was a corporation existing under the laws of the State of Delaware.[2]

7.      TiVo, Inc. was a corporation existing under the laws of the State of Delaware.[3]

---

[1] The statements in this section are made on information and belief.

[2] Rovi Corporation, Annual Report (Form 10-K) (December 31, 2011) at 1 https://www.sec.gov/Archives/edgar/data/1424454/000119312512075292/d266029d10k.htm#tx266029_1.

[3] TiVo Inc., Annual Report (Form 10-K) (January 31, 2016) at 1 https://www.sec.gov/Archives/edgar/data/1088825/000108882516000243/tivo10-k13116.htm.

8.      In or around 2016, Rovi completed its acquisition of TiVo, Inc. and changed its name to TiVo Corporation.[4]  At the time of the merger, Rovi and TiVo had worldwide portfolios of over 6,000 issued patents and pending applications worldwide.  Both companies had monetized their intellectual property, with more than $3 billion in combined IP licensing revenues and past damage awards.[5]

9.      In or around June 2020, Xperi Holding Corp. ("Xperi"), another corporation organized under the laws of Delaware, merged with TiVo Corp. to create "one of the industry's largest and most diverse intellectual property (IP) licensing platforms."[6]

10.      In or around February 2022, Xperi introduced "Adeia" as the new brand for its IP licensing business.  On or around October 2022, Xperi separated its product business and its IP licensing business, and the latter became Defendant Adeia Inc.[7]

11.      According to Adeia Inc.'s website, its Chief Legal Officer is Kevin Tanji, who was previously the Director of Commercial Legal Affairs for Rovi and then Senior Vice President of Commercial Legal Affairs for TiVo Corporation.[8]

12.      Adeia Media LLC and Adeia Guides Inc. (f/k/a Rovi Guides Inc.) are corporate affiliates of Adeia Inc.  The Adeia entities are all headquartered in the same location and managed by the same executives.  The Adeia entities work in concert to license and litigate Adeia's patents, including the Declaratory Judgment Patents.

---

[4] TiVo Corporation Current Report (Form 8-K) (September 7, 2016), https://www.sec.gov/Archives/edgar/data/1675820/000119312516704212/d250033d8k12b.htm.

[5] *Rovi to Acquire TiVo, Creating $3 Billion Entertainment Technology Leader*, Businesswire (April 29, 2016, 7:00 AM), https://www.businesswire.com/news/home/20160429005369/en/Rovi-to-Acquire-TiVo-Creating-3-Billion-Entertainment-Technology-Leader.

[6] *Xperi and TiVo Complete Merger*, Xperi (June 1, 2020), https://investor.xperi.com/news/news-details/2020/Xperi-and-TiVo-Complete-Merger/default.aspx.

[7] Adeia Inc. Annual Report (Form 10-K) (December 31, 2022) at 4. https://www.sec.gov/ix?doc=/Archives/edgar/data/0001803696/000095017023005437/adea-20221231.htm (hereinafter, "Adeia 10-K").

[8] *Bio Details*, Adeia, https://investors.adeia.com/management/kevin-tanji.

## JURISDICTION

13.    This is an action for declaratory relief under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

14.    This Court has personal jurisdiction because, on information and belief, Adeia and its corporate predecessors have, and have had, continuous and systemic contacts within the State of California, including this District.  On information and belief, Adeia's principal place of business is in San Jose, California, which is located in this District.  On further information and belief, Adeia and its predecessors have purposefully directed business activities at this District and residents of this District have licensed patents owned by Defendants.

15.    For example, Rovi has sought to enforce its patent rights in this district in *Rovi Corp., et al. v. Roku, Inc.*, Case No. 12-2185, Dkt. No. 1 (N.D. Cal. May 1, 2012).

16.    Rovi has also admitted that this Court had personal jurisdiction over it in *Netflix, Inc. v. Rovi Corp. et al.*, No. 11-cv-06591, Dkt. No. 16 (N.D. Cal. Feb. 17, 2012) ("Rovi [defined to include Rovi Corp.] admits that this Court has personal jurisdiction over Rovi.").

17.    Likewise, TiVo Inc. previously submitted to this Court's jurisdiction when it filed a complaint for declaratory judgment of non-infringement and invalidity in the Northern District. *See TiVo Inc. v. Digital CBT LLC, et al.*, No. 12-cv-03866, Dkt. No. 1 (N.D. Cal. Jul. 24, 2012).

18.    According to Adeia's website, it currently directs its licensing business activities to this District.  For example, it has licensing agreements with YouTube (San Bruno, CA), YouTube TV (San Bruno, CA), Roku (San Jose, CA), and Omnivision (Santa Clara, CA), each of which, on information and belief, is headquartered in this District.[9]  Adeia also directed its licensing business at X, which also maintains its principal place of business in this District.

19.    As alleged more fully below, all relevant events took place in this District.  This dispute concerns companies that are all based in this District and accused technology that was developed in this District; all relevant business negotiations and contracts were executed in this District; and Adeia has already sued X for breach of contract in this District.

---

[9] *Innovations That Span Industries*, Adeia, https://adeia.com/licensing/.

20.     This Court has federal question jurisdiction under 28 U.S.C.§§ 2331 and 1338(a) because this is a civil action arising under the Patent Act.  This Court has subject matter jurisdiction over X's declaratory judgment claims pursuant to 28 U.S.C. §§ 2201 and 2202 because an immediate and substantial controversy exists between X and Adeia with respect to whether the Declaratory Judgment Patents cover X's activities.

## VENUE

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Adeia resides in this District.  In addition, a substantial part of the events giving rise to the claims at issue occurred in this District and Adeia is subject to personal jurisdiction within this District.

## DIVISIONAL ASSIGNMENT

22.     Pursuant to Civil Local Rules 3-5(b) and 3-2(c), and General Order 44, intellectual property actions are assigned on a district-wide basis.

## BACKGROUND

23.     X, formerly known as Twitter, is the leading social media platform for open communication.  While it has historically been a platform for microblogging, X is the future state of unlimited interactivity—centered in audio, video, messaging, payments/banking—creating a global marketplace for ideas, goods, services, and opportunities.  X is headquartered in San Francisco, California, where it has over 200 assigned employees.

24.     Adeia is an intellectual property licensing platform.  It does not sell products or services.  Instead, it acquires patents and licenses patents in its portfolio to companies in the media and semiconductor industries.[10]  Its patents purportedly cover all aspects of the entertainment experience, including guidance, discovery, search, recommendations, DVR, VOD, OTT, multi-screen, personalization, data analytics, advertising, imaging, content storage and high-performance computing.[11]  Adeia is based in San Jose, California.

---

[10] Adeia 10-K at 4.

[11] *About Adeia*, Adeia, https://adeia.com/about-adeia/.

25.     X has a history of patent license negotiations with Adeia's predecessors.  As early as February 2018, several employees of TiVo-related entities visited Twitter's office in San Francisco for in-person negotiations.

26.     These business negotiations resulted in X entering a patent license agreement with several of Adeia's predecessors on April 25, 2019 (hereinafter, the "PLA").  All parties to the PLA were headquartered in the Northern District of California, and the PLA was executed in San Francisco, California.

27.     On August 7, 2023, Adeia Media LLC sued X for breach of the PLA in Santa Clara Superior Court.  In its complaint, Adeia Media disclosed substantive terms of its license agreement with X in violation of the PLA.

28.     Following Adeia's improper disclosure, X provided notice to Adeia that it was terminating the PLA in a letter dated November 28, 2023.  A true and correct copy of this letter is attached as **Exhibit 1**.  Counsel for X sent the letter to the relevant companies in San Jose and Burbank, California.  X has ceased making royalty payments under the PLA.

29.     Based on the parties' recent communications, X believes the parties have reached an impasse with respect to any future licensing of Adeia's patents.  X does not believe there is any reason for it to license Adeia's patents because Adeia's patents, including the Declaratory Judgment Patents, do not cover any of X's products and services.

30.     X's refusal to license Adeia's patents all but guarantees that Adeia will imminently sue X for patent infringement.

31.     Indeed, as noted above, Adeia has already sued X for breach of the PLA because X stopped making payments under that agreement.

32.     According to Adeia Inc.'s public filings, its business model includes "expend[ing] significant time and effort identifying users and potential users of [its] inventions and negotiating license agreements with companies, including those that may be reluctant to pay for licenses to [its] IP."[12]  Adeia admits that it "ha[s] in the past commenced, and may in the future, commence

_____

[12] Adeia 10-K at 15.

legal or administrative action against the third party if they refuse to enter into a license agreement with us."[13]

33.    Adeia further states: "[i]f we are unable to secure license agreements on favorable terms through negotiations, or if licensees do not comply with the terms of their licenses, we might have to file new litigation to enforce our rights."[14]

34.    The imminent threat to X is further underscored by Adeia's new focus on social media technology.  In an interview that took place in or around October 2022, Adeia's CEO said that Adeia "expects to expand further beyond traditional pay-TV, an industry that's in decline as service operators continue to see their subscriber bases shrink amid the acceleration of pay-TV cord-cutting."[15]  Instead, he said, "the media part of the business will continue to expand into tech areas such as streaming and over-the-top (OTT) video and social media . . . ."[16]

35.    Adeia's plan to target social media companies has already been put into motion. According to Adeia's public filings, its customers now include Google (including YouTube), HBOMax, Peacock, Paramount (including Pluto TV), "and several of the leading social media companies."[17]

36.    Likewise, Adeia's website boasts: "Adeia licenses is patented media inventions for use with traditional linear television . . . and increasingly in connection with OTT, direct-to-consumer, and social media services that provide access to entertainment inside and outside the home on a broad array of devices.  We believe the continued growth of video consumption, the evolution of how consumers explore and experience video, and the need for content storage and high performance computing present new opportunities for us to continue to develop patentable innovations, expand the industries we serve, and to license additional patent rights."[18]

---

[13] *Ibid.*

[14] *Id.* at 7.

[15] Jeff Baumgartner, *Adeia CEO on what follows the spin-out from Xperi*, LightReading (Oct. 3, 2022), https://www.lightreading.com/video-broadcast/adeia-ceo-on-what-follows-the-spin-out-from-xperi.

[16] *Ibid.*

[17] Adeia 10-K at 6.

[18] *About Adeia*, Adeia, https://adeia.com/about-adeia/.

37.     As of Adeia's last Form 10-K (December 2022), Adeia and/or its affiliates were engaged in six different patent infringement actions that they initiated.[19]

38.     Moreover, Adeia's corporate predecessors have a long history of asserting their patents in this Court and many other courts, including the following cases: *Rovi Guides, Inc. v. Comcast Corp. et al.*, 2:19-cv-03096 (C.D. Cal.); *Rovi Guides, Inc. v. Comcast Corp.*, 2:19-cv-00275 (C.D. Cal.); *Rovi Guides, Inc. v. Comcast Corp.*, 2:18-cv-00253 (C.D. Cal.); *Rovi Guides, Inc., et al. v. Comcast Corp. et al.*, 1:16-cv-09278 (S.D.N.Y.); *Rovi Guides, Inc., et al. v. Comcast Corp. et al.*, 2:16-cv-00321 (E.D. Tex.); *Rovi Technologies Corp. et al. v. Hulu LLC*, 2:12-cv-04756 (C.D. Cal.); *Rovi Corp. et al. v. LG Electronics Inc., et al.*, 1:12-cv-00545 (D. Del.); *Rovi Corp. et al. v. VIZIO Inc.¸* 1:12-cv-00546 (D. Del); *Rovi Corp. et al. v. Mitsubishi Electric Corp. et al.*, 1:12-cv-02185 (D. Del.); *Rovi Corp. et al. v. Roku, Inc.*, 5:12-cv-02185 (N.D. Cal.); *Rovi Corp. et al. v. VIZIO, Inc.*, 1:11-cv-01129 (D. Del.); *Rovi Corp. et al. v. Haier Group Corp. et al.*, 1:11-cv-01140 (D. Del.); *Rovi Corp. et al. v. Sharp Corp. et al.*, 3:11-cv-00533 (E.D. Va.); *Rovi Corp. et al. v. Hulu LLC*, 1:11-cv-00665 (D. Del.); *United Video Properties Inc., et al. v. Amazon.Com Inc., et al.*, 1:11-cv-00003 (D. Del.); *Rovi Corp. et al. v. Toshiba Corp. et al.*, 1:10-cv-00931 (D. Del.); *TiVo, Inc. v. Samsung Electronics Co., Ltd., et al.*, 2:15-cv-01503 (E.D. Tex.); *TiVo, Inc. v. Digital CBT LLC, et al.*, 2:13-cv-00206 (C.D. Cal.); *TiVo, Inc. v. Digital CBT LLC, et al.*, 3:12cv-02766 (N.D. Cal.).  Indeed, Hulu filed a declaratory judgment action in this Court alleging that TiVo improperly attempted to threaten Hulu with patents that Hulu did not practice.  *Hulu, LLC v. Rovi Corporation et al.*, 3:17-cv-02942 (N.D. Cal.).

39.     The parties' failed patent license negotiations and Adeia's (including its predecessors') business strategy of suing companies that refuse to license its patents make it highly likely that Adeia will sue X for patent infringement of the Declaratory Judgment Patents. Because X contends that it has the right to engage in its business activities without a license from Adeia, there is a substantial, justiciable controversy between X and Adeia sufficient to warrant a declaratory judgment of their respective rights and duties.

---

[19] Adeia 10-K at 28–29.

40.     These circumstances also create a threat of actual and imminent injury to X that can be redressed by judicial relief.  The injury to X includes uncertainty as to whether the development, use, and sale of X's products, services, and applications will be free from infringement claims based on each of the Declaratory Judgment Patents.  Consequently, the injury is sufficiently immediate and irreparable to warrant the issuance of a declaratory judgment.

## PATENTS

### U.S. Patent No. 10,694,137

41.     U.S. Patent No. 10,694,137 ("the '137 patent") is titled "Systems and Methods for Resizing Content Based on a Relative Importance of the Content" and states on its face that it was issued to Rovi Guides, Inc.  Its named inventors are Vishwas Sharadanagar, Panchaksharaiah, and Vikram Makam Gupta.  A true and correct copy of the '137 patent is attached as **Exhibit 2**.

42.     On information and belief, the current assignee of the '137 patent is Adeia Guides Inc. (f/k/a Rovi Guides Inc.).[20]  On information and belief, Adeia Guides Inc. claims to be the current owner by assignment of all right, title, and interest in the '137 patent.

### U.S. Patent No. 10,951,563

43.     U.S. Patent No. 10,951,563 ("the '563 patent") is titled "Enhancing a Social Media Post with Content that is Relevant to the Audience of the Post" and states on its face that it was issued to Rovi Guides, Inc.  Its named inventor is Madhusudhan Srinivasan.  A true and correct copy of the '563 patent is attached as **Exhibit 3**.

44.     On information and belief, the current assignee of the '563 patent is Adeia Guides Inc. (f/k/a Rovi Guides Inc.).[21]  On information and belief, Adeia Guides Inc. claims to be the current owner by assignment of all right, title, and interest in the '563 patent.

### U.S. Patent No. 11,288,582

45.     U.S. Patent No. 11,288,582 ("the '582 patent") is titled "Systems and Methods for Providing Media Content Recommendations" and states on its face that it was issued to Rovi

---

[20] *See* https://patentcenter.uspto.gov/applications/15200216
[21] *See* https://patentcenter.uspto.gov/applications/16454627

Guides, Inc.  Its named inventors are Kyle Miller, Bryan S. Scappini, and James W. Lent.  A true and correct copy of the '582 patent is attached as **Exhibit 4**.

46.     On information and belief, the current assignee of the '582 patent is Adeia Guides Inc. (f/k/a Rovi Guides Inc.).[22]  On information and belief, Adeia Guides Inc. claims to be the current owner by assignment of all right, title, and interest in the '582 patent.

### U.S. Patent No. 11,756,071

47.     U.S. Patent No. 11,756,071 ("the '071 patent") is titled "Managing Impressions of an Advertisement Campaign" and states on its face that it was issued to Rovi Guides, Inc.  Its named inventors are Joshua Brenner and Christopher Ambrozic.  A true and correct copy of the '071 patent is attached as **Exhibit 5**.

48.     On information and belief, the current assignee of the '071 patent is Adeia Guides Inc. (f/k/a Rovi Guides Inc.).[23]  On information and belief, Adeia Guides Inc. claims to be the current owner by assignment of all right, title, and interest in the '071 patent.

### CLAIMS FOR RELIEF

### COUNT I

### (Declaratory Judgment of Noninfringement of U.S. Patent No. 10,694,137)

49.     Paragraphs 1–48 are incorporated herein by reference.

50.     X has not infringed and does not infringe any claim of the '137 patent either directly or indirectly, literally or under the doctrine of equivalents.

51.     For example, and without limitation, no X product or service meets or embodies the limitation (which appears in all independent, and therefore dependent, claims) of "generat[ing|e] for simultaneous display on a first display device, at a first time, live audio-visual media at a first size and catch-up audio-visual media playing in a window of a second size smaller than the first size, wherein the catch-up audio-visual media corresponds to a previously broadcast segment of the live audio-visual media."  X does not provide "simultaneous" "catch-up" video

---

[22] *See* https://patentcenter.uspto.gov/applications/16370101
[23] *See* https://patentcenter.uspto.gov/applications/17253044

2369242

that "corresponds to a previously broadcast segment of a live video," let alone one that is displayed concurrently in a "window of a smaller size."[24]

52.     As another example, no X product or service meets or embodies the limitations (which appear in all independent, and therefore dependent, claims) of "simultaneously monitor[ing] a relative importance of concurrently-presented events from the live audio-visual media and from the catch-up audio-visual media as each of the live audio-visual media and the catch-up audio-visual media play back" and/or "determin[ing|e], based on the profile, during the monitoring, that an importance of a first event occurring at a second time later than the first time of the concurrently-presented events from the live audio-visual media is smaller in importance than an importance of a second event of the concurrently-presented events from the catch-up audio-visual media" and/or "resiz[ing|e], at the second time, the window of the catch-up audio-visual media to a third size larger than the second size of the window at the first time based on a comparison, performed during the monitoring, of the importance of the first event with respect to the importance of the second event."  Because X does not simultaneously provide "live" and "catch-up" video,[25] there is no relative importance for it to monitor or determine, nor can this be a basis for resizing decisions.  Further, video resizing in X such as displaying a single video as a large full-screen video or small picture-in-picture video is initiated manually by a user's mouse click, not automatic resizing logic.

53.     As set forth above, an actual controversy exists between X and Adeia with respect to the '137 patent and this controversy is likely to continue.  Accordingly, X desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '137 patent.

## <u>COUNT II</u>

### (Declaratory Judgment of Noninfringement of U.S. Patent No. 10,951,563)

54.     Paragraphs 1–53 are incorporated herein by reference.

---

[24] *See* https://help.twitter.com/en/using-x/x-live.

[25] *See id.*

2369242

55.    X has not infringed and does not infringe any claim of the '563 patent either directly or indirectly, literally or under the doctrine of equivalents.

56.    For example, and without limitation, no X product or service meets or embodies the limitations (which appear in all independent, and therefore dependent, claims) "identify[ing], in a frame of the first content item, a portion of the frame that is a non-focus portion" and/or "identify[ing] a plurality of content items that fit within the non-focus portion of the frame" and/or "select[ing] a second content item, from the plurality of content items, that matches the content preference of the audience and has a duration that does not exceed the estimated length of time" and/or "generat[ing] an enhanced social media post by overlaying the second content item onto the non-focus portion of the frame of the first content item extracted from the social media post" and/or "generat[ing] for display the enhanced social media post" because X does not offer the type of enhancement functionality recited in these limitations as part of its social media posting features.[26]

57.    As set forth above, an actual controversy exists between X and Adeia with respect to the '563 patent and this controversy is likely to continue.  Accordingly, X desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '563 patent.

### COUNT III

**(Declaratory Judgment of Noninfringement of U.S. Patent No. 11,288,582)**

58.    Paragraphs 1–57 are incorporated herein by reference.

59.    X has not infringed and does not infringe any claim of the '582 patent either directly or indirectly, literally or under the doctrine of equivalents.

60.    For example, and without limitation, no X product or service meets or embodies the limitation (which appears in all independent, and therefore dependent, claims) "assign[ing] a plurality of weight values to each prediction algorithm" because X uses a single recommendation

---

[26] *See, e.g.*, https://help.twitter.com/en/using-x/posting-gifs-and-pictures; https://help.twitter.com/en/using-x/x-videos.

2369242

algorithm, rather than a weighted plurality of multiple algorithms.[27]  In addition, to the extent Adeia argues that X's candidate sources are "recommendation algorithms" (they are not), no "weigh values" are "assign[ed]" because in X's algorithm "all candidates are treated equally, without regard for what candidate source it originated from."[28]

61.    As another example, no X product or service meets or embodies limitations (which appears in all independent, and therefore dependent, claims) "generat[ing|e] evaluation metrics based on a match between the requests for content items and the set of recommended content items generated for the particular candidate combination" because X instead uses a "~48M parameter neural network," "heuristics and filters."[29]

62.    As another example, no X product or service meets or embodies limitation (g) which appears in all independent claims (1 and 10) (and therefore also all dependent claims) because X does not use the iterative process recited in this limitation to generate recommended content items.[30]

63.    As set forth above, an actual controversy exists between X and Adeia with respect to the '582 patent and this controversy is likely to continue.  Accordingly, X desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '582 patent.

## COUNT IV

### (Declaratory Judgment of Noninfringement of U.S. Patent No. 11,756,071)

64.    Paragraphs 1–63 are incorporated herein by reference.

65.    X has not infringed and does not infringe any claim of the '071 patent either directly or indirectly, literally or under the doctrine of equivalents.

66.    For example, and without limitation, no X product or service meets or embodies the limitations (which appear in all independent, and therefore dependent, claims) "determining[,

---

[27] *See* https://blog.twitter.com/engineering/en_us/topics/open-source/2023/twitter-recommendation-algorithm.

[28] *Id*.

[29] *Id*.

[30] *Id*.

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NONINFRINGEMENT
Case No. 3:23-cv-06151

2369242

using the processing circuitry,] a redistribution of allocations of the number of budgeted impressions from the at least one low-performing campaign to the high-performing campaign based on each of the respective rates of impression generation of the at least two advertisement campaigns" and/or "causing to be implemented[, using the processing circuitry,] the redistribution amongst the at least two advertisement campaigns" because X has no feature for dynamically reallocating budgets across campaigns.[31]

67.     As set forth above, an actual controversy exists between X and Adeia with respect to the '071 patent and this controversy is likely to continue.  Accordingly, X desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '071 patent.

## DEMAND FOR RELIEF

WHEREFORE, X prays that judgment be entered in its favor and requests:

(1)  A judgment and declaration that X has not infringed and does not infringe in any manner any claim of the Declaratory Judgment Patents, directly, contributorily, or by inducement, and has not otherwise infringed or violated any rights of Adeia and its affiliates, subsidiaries, assigns, employees, or agents;

(2)  An injunction against Adeia and its affiliates, subsidiaries, assigns, employees, agents, and/or anyone acting in privity or concert with Adeia from charging infringement or instituting any legal action for infringement of the Declaratory Judgment Patents against X or anyone acting in privity with X, including the divisions, successors, assigns, agents, suppliers, manufacturers, contractors, and customers of X;

(3)  A judgment and declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling X to an award of its reasonable attorneys' fees, expenses, and costs in this action;

(4)  An award to X of its costs and reasonable expenses to the fullest extent permitted by law; and

---

[31] *See* https://business.twitter.com/en/help/campaign-measurement-and-analytics/campaign-dashboard.html.

1    (5)  An award of such other and further relief as the Court may deem just and proper.

2                              **<u>DEMAND FOR JURY TRIAL</u>**

3    Pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 3-6(a), X hereby

4    demands a trial by jury on all issues so triable.

5

6    Dated:  November 28, 2023                    KEKER, VAN NEST & PETERS LLP

7

8                                       By:   */s/ David Silbert*
                                               DAVID SILBERT
9                                              SHARIF E. JACOB
                                               KRISTEN E. LOVIN
10                                             TAYLOR REEVES
                                               EMILY A. HASSELBERG
11
                                               Attorneys for Plaintiff X CORP.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NONINFRINGEMENT
Case No. 3:23-cv-06151

2369242