Benjamin W. Hattenbach (SBN 186455)
Charlotte J. Wen (SBN 313572)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:  (310) 277-1010
bhattenbach@irell.com
cwen@irell.com

A. Matthew Ashley (SBN 198235)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California  92660
Telephone: (949) 760-0991
mashley@irell.com

*Counsel for Defendants*
ADEIA INC., ADEIA MEDIA LLC, ADEIA
GUIDES INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| X CORP.,<br><br>Plaintiff,<br><br>v.<br><br>ADEIA INC., ADEIA MEDIA LLC, and ADEIA GUIDES INC.<br><br>Defendants. | Case No. 3:23-cv-06151-TLT<br><br>[PUBLIC VERSION]<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Hearing Date: April 9, 2024<br>Hearing Time: 2:00 p.m.<br>Location:  Courtroom 9, 19th Floor<br>Judge:  Hon. Trina L. Thompson |

1  **TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2  PLEASE TAKE NOTICE THAT on April 9, 2024, at 2:00 p.m., or as soon thereafter as may

3  be heard, Defendants Adeia Inc., Adeia Media LLC, and Adeia Guides Inc. (collectively, "Adeia")

4  shall and hereby move for an order dismissing Plaintiff X Corp.'s ("X") Complaint with prejudice.

5  The Court has set a Case Management Conference in this case on March 7, 2024 at 2:00 p.m.  If the

6  Court's schedule allows, Defendants respectfully request, in the alternative, that the Court hear

7  argument on this Motion at the CMC.

8  This Motion is based upon this Notice of Motion; the accompanying Memorandum of Points

9  and Authorities; the accompanying Declaration of James Proffitt; the accompanying Declaration of

10 Charlotte J. Wen and evidence attached thereto; the files, records, and pleadings in this case; such

11 evidence and argument as may be proffered at the hearing of this Motion, and any other matters that

12 the Court deems appropriate.

13 Dismissal is warranted under Federal Rules of Civil Procedure 12(b)(1) for lack of subject-

14 matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

15 Dismissal is also appropriate pursuant to this Court's discretion to decline declaratory judgment

16 jurisdiction.

**RELIEF REQUESTED**

17

18 Adeia respectfully requests dismissal, with prejudice, of X's Complaint, due to lack of subject

19 matter jurisdiction.   In the alternative, Adeia requests that the Court exercise its substantial

20 discretion to decline declaratory judgment jurisdiction in this case.

21

22

23 Dated: January 16, 2024                    Respectfully submitted,

24                                            By:    */s/ Charlotte J. Wen*
                                                    Charlotte J. Wen

25
                                            *Counsel for Defendants*
26                                           ADEIA INC., ADEIA MEDIA LLC,
                                             ADEIA GUIDES INC.
27

28

1

## TABLE OF CONTENTS

2

**Page**

3

I.     INTRODUCTION ......................................................................................................... 1

4

II.    BACKGROUND ............................................................................................................ 3

5

       A.    The Parties ........................................................................................................ 3

6

       B.    Patent License Agreement And Breach ............................................................ 3

7

III.   LEGAL STANDARD .................................................................................................... 4

8

IV.    ARGUMENT .................................................................................................................. 6

9

       A.    X's Declaratory Judgment Claims Should Be Dismissed For Lack
             Of Subject Matter Jurisdiction ......................................................................... 6

10

             1.    Adeia Has Not Made Any "Affirmative Act" To Enforce Its
11                 Patents .................................................................................................... 6

12           2.    There Are No "Adverse Legal Interests" As To The
                   Declaratory Judgment Patents ............................................................. 12

13

       B.    The Court Should Exercise Its Substantial Discretion To Decline
14           Jurisdiction ..................................................................................................... 13

15

V.     CONCLUSION ............................................................................................................ 15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*3M Co. v. Avery Dennison Corp.*,
5     673 F.3d 1372 (Fed. Cir. 2012)...................................................................................5

6

*Adeia Media LLC v. X Corp.*,
    No. 23-CV-420578 (Santa Clara County Super. Ct., Aug. 7, 2023)............................4
7

*Adobe Sys., Inc. v. Kelora Sys.*,
8     No. C 11-3938, 2011 WL 6101545 (N.D. Cal. Dec. 7, 2011) ....................................5

9

*Apple Inc. v. VoIP-Pal.com, Inc.*,
10     506 F. Supp. 3d 947 (N.D. Cal. 2020) ..................................................................4, 6

11

*Applera Corp. v. Mich. Diagnostics, LLC*,
    594 F. Supp. 2d 150 (D. Mass. 2009) .......................................................................8
12

*Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*,
13     689 F.3d 1303 (Fed. Cir. 2012), *rev'd in part on other grounds by Ass'n for*
    *Molecular Pathology v. Myriad Genetics, Inc*., 569 U.S. 576 (2013) ..................4, 11
14

*BP Chems. Ltd. v. Union Carbide Corp.*,
15     4 F.3d 975 (Fed. Cir. 1993) .....................................................................................14

16

*Broadband iTV, Inc. v. OpenTV, Inc.*,
17     No. 17-CV-06647, 2018 WL 4927935 (N.D. Cal. Feb. 22, 2018)........................9, 10

18

*Cepheid v. Roche Molecular Sys.*, Inc., No.
19     C-12-4411, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013) ...........................4, 5, 7, 15

20

*Gov't Employees Ins. Co. v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998)..................................................................................14
21

*Hewlett-Packard Co. v. Acceleron LLC*,
22     587 F.3d 1358 (Fed. Cir. 2009)................................................................................11

23

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
    No. CIV A 07-589, 2008 WL 2746960 (D. Del. July 14, 2008) (Stark, J.), *aff'd*,
24     599 F.3d 1377 (Fed. Cir. 2010)...........................................................................9, 11

25

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
26     695 F.3d 1322 (Fed. Cir. 2012).......................................................................5, 12, 13

27

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ..............................................................................................4, 6

28

**Page**

*Minn. Mining & Mfg. Co. v. Norton Co.*,
  929 F.2d 670 (Fed. Cir. 1991) ........................................................................5, 14

*Neilmed Prod., Inc. v. Med-Sys., Inc.*,
  472 F. Supp. 2d 1178 (N.D. Cal. 2007) ...................................................................14

*Prasco, LLC v. Medicis Pharm. Corp.*,
  537 F.3d 1329 (Fed. Cir. 2008) ..............................................................................10, 12

*Proofpoint, Inc. v. InNova Patent Licensing*,
  No. 5:11-CV-02288, 2011 WL 4915847 (N.D. Cal. Oct. 17, 2011) .............................5

*In re Qualcomm Litig.*,
  No. 17-CV-108, 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) ........................................ *passim*

*Takeda Pharm Co. v. Mylan Inc.*,
  62 F. Supp. 3d 1115 (N.D. Cal. 2014) ......................................................................5

*Teva Pharms. USA, Inc. v. EISAI Co.*,
  620 F.3d 1341 (Fed. Cir. 2010), *vacated on other grounds sub nom. Teva
  Pharms. USA, Inc. ex rel. Gate Pharms. Div. v. EISAI Co.*, 426 F. App'x 904
  (Fed. Cir. 2011) ......................................................................................................5

*Verance Corp. v. Digimarc Corp.*,
  No. CIV.A. 10-831, 2011 WL 2182119 (D. Del. June 2, 2011), *appeal
  voluntarily dismissed*, 465 F. App'x 934 (Fed. Cir. 2012)........................................13

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) .................................................................................................5, 13

**Rules**

Fed. R. Civ. P. 12(b)(1) ..............................................................................................1, 15

████████████

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Defendants Adeia Inc., Adeia Media Guides Inc., and Adeia Media LLC (collectively, with its predecessors-in-interest, "Adeia") respectfully request that Plaintiff X Corporation's ("X") Complaint for Declaratory Judgment be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  There is no case or controversy between Adeia and X with respect to the four patents that are the subject of X's declaratory judgment claims (the "Declaratory Judgment Patents")—patents that Adeia never accused X of infringing or even mentioned in the parties' communications, and to which X is currently licensed.  Particularly in view of these facts, X falls far short of establishing jurisdiction under the Declaratory Judgment Act.  *In re Qualcomm Litig.*, No. 17-CV-108, 2017 WL 5985598, at *15–16 (S.D. Cal. Nov. 8, 2017) (finding no subject matter jurisdiction where the patentee "had never accused [plaintiff] of infringing the" declaratory judgment patents, "never presented or even referred to claim charts" for those patents, and did not indicate "that it would imminently assert its patent rights").

Contrary to X's claims that "X's refusal to license Adeia's patents all but guarantees that Adeia will imminently sue X for patent infringement," Compl. ¶ 30, ECF No. 1, and that it is "highly likely that Adeia will sue X for patent infringement of the Declaratory Judgment Patents," *id.* ¶ 39:

- Adeia has never specifically identified any of the Declaratory Judgment Patents to X, shared claim charts relating to any of the Declaratory Judgment Patents with X, discussed any of the Declaratory Judgment Patents with X, or claimed that X infringes any of the Declaratory Judgment Patents.  Proffitt Decl. ¶¶ 3–4.[1]  Adeia has never taken a position, at any time or for any purpose, on whether X uses any of the Declaratory Judgment Patents.  *Id.*

- Adeia has never filed a patent infringement suit against X.  Proffitt Decl. ¶ 5.  Adeia likewise has no history of enforcing the Declaratory Judgment Patents against X ████████.  Adeia has never ██████████████████████████, and has never asserted any of them against any third party in litigation.  *Id.* ¶ 6.

---

[1] "Proffitt Decl." refers to the Declaration of James Proffitt, Adeia's Intellectual Property Licensing Director, which has been filed alongside this motion.  Proffitt Decl. ¶ 2.

1    If it were possible to establish declaratory judgment jurisdiction under these facts, companies

2  could flood this District with non-infringement suits based on patents that have never even been

3  discussed, let alone threatened for assertion or actually asserted, by patentees, and this Court's

4  docket would quickly be overloaded.   Federal law does not provide for jurisdiction allowing

5  companies to seek such advisory opinions.   *Qualcomm*, 2017 WL 5985598, at *18 ("Under

6  [plaintiff's] position, . . . [plaintiff] could assert Declaratory Judgment jurisdiction over patents that

7  have never been at issue . . . which neither appear[] in any licensing discussion, nor ha[ve] ever been

8  specifically referenced by [the patentee] or [plaintiff] as a patent that [patentee] might assert in an

9  infringement action.   This reach is too broad in light of the Federal Circuit's requirement of an

10  affirmative act.").

11    There is simply no "actual controversy" here.   Even if there were, jurisdiction under the

12  Declaratory Judgment Act is never mandatory, and a district court has broad discretion to decline

13  jurisdiction if it deems that a controversy does not present a "worthwhile" investment of judicial

14  resources.   *Qualcomm*, 2017 WL 5985598, at *22.   At the heart of the parties' dispute is X's refusal

15  to pay royalties under the patent license agreement (the "PLA") that its predecessor, Twitter Inc.

16  ("Twitter"), agreed to with Adeia in 2019.   This lawsuit is X's strategic response to Adeia's attempt

17  to recover those unpaid royalties via a breach of contract action in state court, and a clear attempt to

18  gain leverage in its bid to avoid paying those royalties.   Not only would X's requested declaratory

19  judgment fail to resolve the vast majority of the potential future disputes between the parties—the

20  PLA covers ███████ patents, not merely the four Declaratory Judgment Patents—but it would

21  not even have any bearing on the question of whether X must pay those royalties in the first instance.

22  That question is already being adjudicated in state court, where Adeia has made clear that the parties'

23  license agreement remains in effect notwithstanding X's non-payment of royalties.

24

25

26

27

28

II.   **BACKGROUND**[2]

A.   **The Parties**

Defendants Adeia Inc., Adeia Media LLC and Adeia Guides Inc. are companies organized under the laws of the State of Delaware.  Adeia owns an expansive media patent portfolio covering innovations in all aspects of the entertainment experience, from search and recommendations to data analytics, advertising and high-performance computing.  Compl. ¶ 24.  Adeia licenses patents in its media portfolio to companies in the media space.  *Id.*

Formerly known as Twitter Inc. ("Twitter"), X is a social media company organized under the laws of the State of Nevada and headquartered in San Francisco, California.  *Id.* ¶¶ 2, 23.

B.   **Patent License Agreement And Breach**

On April 25, 2019, Twitter and Adeia's predecessors negotiated and entered into the PLA. Compl. ¶ 26; Ex. 1 (PLA) at 1.  ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████  *Id.*  Under the PLA, Twitter obtained a license to a portfolio of ███████████████████████, in exchange for a flat royalty fee of $3 million for each year of the license term.████████████████████████████████████.  Ex. 1 (PLA) at 6–7; Schedules (pp. 7–77).  ██████████████████████████████████████████████████████ ██████████████.  *See* Ex. 2 (Adeia Compl.) ¶ 10.

In October 2022, Twitter was privately acquired.[3]  In the ensuing months, Twitter, for the first time in its business relationship with Adeia, stopped making payments under the PLA.  Adeia

---

[2] Unless otherwise stated, the facts set forth herein are taken from the Complaint and assumed for purposes of this motion to be true.  All exhibits (noted with "Ex.") are attached to the Declaration of Charlotte J. Wen.

[3] The acquisition was acrimonious, with the acquirer (Elon Musk) attempting to back out of the deal, which spawned extensive litigation.  *See, e.g.* Twitter's Schedule 14A Proxy Statement (July 26, 2022), https://www.sec.gov/Archives/edgar/data/1418091/000119312522202163/ d283119ddefm14a.htm ("Twitter believes that Mr. Musk's purported termination is invalid and wrongful, and the merger agreement remains in effect. On July 12, 2022, Twitter commenced litigation against Mr. Musk . . . .").  Since that time, X has been sued on multiple occasions for alleged refusal to comply with contracts entered into by Twitter.  *See, e.g.* Lora Kolodny, *Elon Musk-led Twitter has been sued by at least six companies for failing to pay bills*, CNBC (Feb. 24, 2023), https://www.cnbc.com/2023/02/24/musks-twitter-has-been-sued-by-at-least-six-companies-for-unpaid-bills.html.

1 ██████████████████████████████████████████████████████████████

2 ████████████████████████████████████████, but these negotiations were

3 unsuccessful.  Proffitt Decl. ¶ 3.  On August 7, 2023, Adeia filed a breach of contract suit against X

4 in Santa Clara Superior Court to recover the royalty payments owed by X under the PLA.  Ex. 2

5 (Adeia Compl.) at 1; *see also Adeia Media LLC v. X Corp.*, No. 23-CV-420578 (Santa Clara County

6 Super. Ct., Aug. 7, 2023).  Adeia's suit specifically stated that "[t]he License Agreement has not

7 been terminated, and it remains in effect."  Ex. 2 (Adeia Compl.) ¶ 7.  Adeia has also confirmed this

8 in post-suit correspondence.  Ex. 3 (Adeia 1/4/2024 Ltr.).

9 On November 28, 2023, the same day that this Complaint was filed, X wrote to Adeia

10 purporting to unilaterally terminate the PLA.  Compl. ¶ 28; ECF No. 5.  In its Complaint, X seeks a

11 declaration of non-infringement as to the Declaratory Judgment Patents—four patents that are

12 covered by the PLA, were never mentioned in any discussions between the parties, ████████████

13 ██████████████████████████████████████.  Proffitt Decl. ¶¶ 4, 7.

14 **III.   LEGAL STANDARD**

15 Federal courts have jurisdiction over declaratory judgment claims only where "the facts

16 alleged, under all the circumstances, show that there is a substantial controversy, between parties

17 having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

18 declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007).  In patent

19 infringement cases, an actual controversy requires "an affirmative act by the patentee related to the

20 enforcement of his patent rights."  *Ass'n for Molecular Pathology v. U.S. Patent & Trademark

21 Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012) (citations omitted), *rev'd in part on other grounds by

22 Ass'n for Molecular Pathology v. Myriad Genetics, Inc*., 569 U.S. 576 (2013) ("*Myriad*").

23 In determining whether the plaintiff has carried its burden to establish that the patentee has

24 made such "an affirmative act," California district courts evaluate thirteen factors derived from the

25 Federal Circuit's post-*MedImmune* jurisprudence, including "the patent holder's history of

26 enforcing the patent at issue" and "whether the patent holder has identified a specific patent and

27 specific infringing products."  *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 967–68 (N.D.

28 Cal. 2020); *see also Cepheid v. Roche Molecular Sys.*, Inc., No. C-12-4411, 2013 WL 184125, at

*6 (N.D. Cal. Jan. 17, 2013) (collecting Federal Circuit cases).  Critically, the "affirmative act" must be "directed at [the] plaintiff, not just broad and widespread enforcement activity."  *Adobe Sys., Inc. v. Kelora Sys.*, No. C 11-3938, 2011 WL 6101545 at *3–4 (N.D. Cal. Dec. 7, 2011).

On a motion to dismiss for lack of subject matter jurisdiction, the Court first considers whether the allegations of the complaint, if true, support jurisdiction.  If so, the Court then considers whether any additional facts outside the pleadings have been presented.  Only if the allegations of the complaint and the other facts in the record both demonstrate an actual case or controversy can a court proceed to hear the dispute on its merits.  Otherwise, the Court must dismiss the complaint.  *Proofpoint, Inc. v. InNova Patent Licensing*, No. 5:11-CV-02288, 2011 WL 4915847, at *1 (N.D. Cal. Oct. 17, 2011); *see also 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378 (Fed. Cir. 2012) ("[O]nce challenged, allegations alone are insufficient to meet the complainant's burden to establish jurisdiction.  The district court must satisfy itself that there is a factual basis for it to exercise jurisdiction.  In doing so, it may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."  (internal quotations omitted)).

"[E]ven if a case or controversy exists, the trial court has significant discretion in determining whether or not to exercise declaratory judgment jurisdiction."  *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 n.3 (Fed. Cir. 2012); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts **unique and substantial discretion** in deciding whether to declare the rights of litigants."  (emphasis added)).  For example, it is well-settled that a district court may decline declaratory judgment jurisdiction where a party has "instituted an action solely to enhance its bargaining power in negotiations."  *Cepheid*, 2013 WL 184125, at *13 (N.D. Cal. Jan. 17, 2013) (citing *Teva Pharms. USA, Inc. v. EISAI Co.*, 620 F.3d 1341, 1349 (Fed. Cir. 2010), *vacated on other grounds sub nom. Teva Pharms. USA, Inc. ex rel. Gate Pharms. Div. v. EISAI Co*., 426 F. App'x 904 (Fed. Cir. 2011)).  It may also decline jurisdiction where the "investment of judicial time and resources" would not be "worthwhile."  *Takeda Pharm Co. v. Mylan Inc.*, 62 F. Supp. 3d 1115, 1126-28 (N.D. Cal. 2014) (citing *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991)).

IV.   **ARGUMENT**

   A.   <u>**X's Declaratory Judgment Claims Should Be Dismissed For Lack Of Subject Matter Jurisdiction**</u>

   There is no "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" as to the Declaratory Judgment Patents.  *MedImmune*, 549 U.S. at 127.  ***First***, there is no "substantial controversy" between Adeia and X relating to the Declaratory Judgment Patents, because there has been no "affirmative act" by Adeia to enforce the Declaratory Judgment Patents (nor has X even alleged any such act).  ***Second***, Adeia and X do not have "adverse legal interests" as they relate to the Declaratory Judgment Patents (nor has X even alleged the contrary).

   1.   **Adeia Has Not Made Any "Affirmative Act" To Enforce Its Patents**

   In considering whether a patentee has actually made an "affirmative act" to enforce its patent rights, California district courts evaluate the totality of the circumstances under thirteen factors derived from Federal Circuit case law.

> (1) the strength of threatening language in communications between the parties; (2) the depth and extent of infringement analysis conducted by the patent holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of times the patent holder has contacted the alleged infringer; (8) whether the patent holder is a holding company with no income other than enforcing patent rights; (9) whether the patent holder refused to give assurance it will not enforce the patent; (10) whether the patent holder has identified a specific patent and specific infringing products; (11) the extent of the patent holder's familiarity with the product prior to suit; (12) the length of time that transpired after the patent holder asserted infringement; and (13) whether communications initiated by the plaintiff appear as an attempt to create a controversy.

*VoIP-Pal.com*, 506 F. Supp. 3d at 967–68.

   The pertinent facts of this case are nearly identical to those that another California district court held are insufficient as a matter of law to satisfy declaratory judgment jurisdiction.  *Qualcomm*, 2017 WL 5985598, at *15–22.  In *Qualcomm*, Apple and Qualcomm engaged in unsuccessful patent licensing negotiations, during which Qualcomm shared a list of licensable patents and referenced "hundreds of claim charts."  *Id.* at *12–13, *16.  Apple filed suit, seeking, among other things, declaratory judgment of non-infringement as to nine of Qualcomm's patents.  *Id.* at *12.  Qualcomm

moved to dismiss the suit as to those nine patents for lack of subject matter jurisdiction, and submitted evidence that it had never specifically identified those patents to Apple in any licensing correspondence, never provided claim charts for those specific patents, and never specifically threatened an infringement suit on those patents. *Id.* at *13, *19. The court evaluated the most relevant of the thirteen factors and concluded that there was no jurisdiction over Apple's declaratory judgment claims:

> In light of the (1) complete absence of detailed infringement analysis as to the Additional Patents-in-Suit; (2) the lack of threatening communications from Qualcomm to Apple; (3) the lack of a deadline to respond; and (4) most importantly the lack of specific identification of the Additional Patents-in-Suit, the Court finds that there is not an affirmative act sufficient to establish Declaratory Judgment jurisdiction as to the Additional-Patents-in-Suit. Qualcomm has never specifically identified the Additional Patents-in-Suit in any licensing correspondence, and has never provided claim charts to Apple regarding these particular patents.

*Qualcomm*, 2017 WL 5985598, at *19. Here, exactly as in *Qualcomm*, Adeia has never specifically identified the Declaratory Judgment Patents in any licensing correspondence, and never provided claim charts to X regarding these particular patents. Proffitt Decl. ¶¶ 4–5. Nor has X alleged that Adeia has made any "threatening communications" or imposed a "deadline to respond" with respect to any of Adeia's patents, let alone the Declaratory Judgment Patents. *See generally* Compl.

The *Qualcomm* court conducted a detailed analysis of the factors, finding that the overwhelming majority of them weighed against jurisdiction. It noted in particular that the tenth factor, "whether the patent holder has identified a specific patent and specific infringing product," "weighs ***severely*** against finding declaratory judgment jurisdiction" where the patentee has evinced a "lack of specificity in identifying precise infringing patents." *Qualcomm*, 2017 WL 5985598, at *19 ("Qualcomm has not made specific allegations of infringement as to the [declaratory judgment patents], nor has Qualcomm presented claim charts relating to these patents.") (emphasis added). Similarly, the court noted that the second factor, "the depth and extent of infringement analysis conducted by the patent holder," "weighs ***strongly*** in favor" of disallowing jurisdiction where "Qualcomm has never accused Apple of infringing the [declaratory judgment patents]" and "never presented or even referred to claim charts in connection with the [declaratory judgment patents]." *Id.* at *15–16 (emphasis added); *see also, e.g., Cepheid*, 2013 WL 184125, at *10 (patentee's

communications did not weigh in favor of jurisdiction where they either merely listed the declaratory judgment patent generally "among numerous other patents," or specifically identified the patent but did "not specifically identify which of Plaintiff's products allegedly infringe").

Here, Adeia has never accused X of infringing the Declaratory Judgment Patents, and the parties have never discussed the Declaratory Judgment Patents, or exchanged any claim charts or other analysis regarding the same.  Proffitt Decl. ¶¶ 4–5.  Thus, the second and tenth factors weigh heavily against a finding of jurisdiction under these facts.  Indeed, in this case, there is no allegation that Adeia has asserted, or even mentioned, the Declaratory Judgment Patents, to **anyone** ███████.  *Id.* ¶ 7.  So the situation here even more strongly than in *Qualcomm* demonstrates there is no subject matter jurisdiction.  *See also Applera Corp. v. Mich. Diagnostics, LLC*, 594 F. Supp. 2d 150, 160 (D. Mass. 2009) (dismissing counterclaim for declaratory judgment of non-infringement where correspondences between the parties "besp[oke] the lack of any specific dispute" concerning the declaratory judgment patents).

The other factors also demonstrate lack of subject matter jurisdiction.  The first and thirteenth factors, "strength of threatening language in communications between the parties" and "whether communications initiated by the plaintiff appear as an attempt to create a controversy," weigh against jurisdiction.  X's Complaint only references the parties' "failed license negotiations" and "X's refusal to license."  Compl. ¶¶ 30, 39.  Although X alleges that Adeia's public-facing website states that "[i]f we are unable to secure license agreements on favorable terms through negotiations, or if licensees do not comply with the terms of their licenses, we might have to file new litigation to enforce our rights," *id.* ¶¶ 32–33, X does not allege that Adeia made such a communication *to X*, and Adeia did not.  Proffitt Decl. ¶ 6.[4]  X also does not allege that Adeia threatened to file an infringement suit based on the Declaratory Judgment Patents, and Adeia in fact has never done so, as to X ███████████████████  Proffitt Decl. ¶¶ 4–7.

---

[4] Notably, at the time of *In re Qualcomm*, Qualcomm's public filings similarly stated that Qualcomm has "entered into litigation in the past and may need to further litigate in the future to enforce [its] contract and/or intellectual property rights[.]" Qualcomm Inc., Annual Report (Form 10-K) (Nov. 2, 2016).  https://www.sec.gov/Archives/edgar/data/804328/000123445216000552/qcom10-k2016.htm.

These facts cannot support declaratory judgment jurisdiction. *E.g.*, *Qualcomm*, 2017 WL 5985598, at *16 (communication factor "weighs in favor of disallowing . . . jurisdiction," where the patentee did not "appear to be threatening" the infringer with the declaratory judgment patents, regardless of the infringer's claim that it felt threatened); *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, No. CIV A 07-589, 2008 WL 2746960, at *8 (D. Del. July 14, 2008) (Stark, J.) (patentee's communication that it would "act aggressively" and "would sue" did not support declaratory judgment jurisdiction, because the statements were hypothetical and the patentee had not yet taken any position on whether the plaintiff's product infringed), *aff'd*, 599 F.3d 1377, 1381 (Fed. Cir. 2010) ("We agree that the indirection reflected in these conversations did not produce a controversy of such 'immediacy and reality' as to require the district court to accept declaratory jurisdiction.").

Nor does Adeia's decision to file a state court suit to recover the royalties owed by Twitter under the PLA create a case or controversy as to the Declaratory Judgment Patents. Adeia has not sought to terminate the PLA; to the contrary, Adeia has repeatedly affirmed that the PLA remains in effect. Ex. 2 (Adeia Compl.) ¶ 7; Ex. 3 (Adeia 1/4/2024 Ltr.). The PLA covers ▮▮▮▮ patents in addition to the four Declaratory Judgment Patents. In other words, the PLA grants X a license to use not only the claims of the Declaratory Judgment Patents, but all of the other patents in the licensed portfolio. *See* Ex. 1 (PLA) at Schedules (pp. 7–77).

Under these circumstances—that is, where a license agreement grants more rights than those conferred by the claims of the declaratory judgment patents—this District has found that a patentee does not create an infringement controversy as to those patents simply by filing a breach of contract suit. *Broadband iTV, Inc. v. OpenTV, Inc.*, No. 17-CV-06647, 2018 WL 4927935, at *5 (N.D. Cal. Feb. 22, 2018). In *Broadband*, the parties had entered into a license agreement covering multiple technologies. *Id.* at *1. The licensee stopped making royalty payments, citing the belief that it did not infringe one of the covered patents. *Id.* The patentee sued for breach of contract to recover those unpaid royalties. *Id.* In response, the licensee filed a non-infringement declaratory judgment counterclaim, which the court dismissed for lack of subject matter jurisdiction. *Id.* at *5. The court reasoned that the parties' agreement did "not restrict the license to the claims of the [declaratory

judgment patent]," such that a declaration of non-infringement would not conclusively resolve the issue of whether royalties were owed. *Id.* at *5. Similarly, here, Adeia's state court suit for breach of contract to recover royalties under the PLA does not create a controversy as to whether X infringes the Declaratory Judgment Patents, which number just four out of the ███████ patent rights covered by the PLA.

The third and twelfth factors, "whether the patent holder imposed a deadline to respond," and "the length of time that transpired after the patent holder asserted infringement," also weigh against jurisdiction. X does not allege that Adeia imposed any such deadline or that Adeia asserted infringement; to the contrary, X's Complaint alleges that it was *X* that purported to terminate the PLA, on November 28, 2023, the same day it filed this lawsuit. Compl. ¶ 28. In addition, Adeia did not threaten X with patent infringement, Proffitt Decl. ¶¶ 4, 6, and accordingly did not impose a deadline on X to respond to a threat that was never made. Although Adeia and X (through their predecessors) engaged in licensing negotiations in and prior to 2019, those discussions did not involve the Declaratory Judgment Patents. *Id.* ¶ 4.

The fourth and eighth factors, "any prior litigation between the parties" and "whether the patent holder is a holding company with no income other than enforcing patent rights," are insufficient to establish jurisdiction here. Adeia and X have previously engaged in patent licensing discussions, *e.g.*, Compl. ¶ 25, but X does not allege that the parties have ever been engaged in patent infringement litigation prior to this suit. They have not. Proffitt Decl. ¶ 6. X alleges only that Adeia and its predecessor entities have engaged in litigation in the past and are currently engaged in patent litigations with other parties, have been in the business of patent enforcement and licensing, and have made public statements regarding their business. Compl. ¶¶ 36–38. However, a "prior suit premised on other patents cannot alone create a real and immediate controversy, and it is entitled to only minimal weight in analyzing whether such a controversy has been created." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008). Indeed, the *Qualcomm* court gave Apple's assertion that Qualcomm was "increasingly aggressive" in enforcing its patents (as evidenced by its litigation against other parties) only marginal weight in the declaratory judgment jurisdiction calculus. *See Qualcomm*, 2017 WL 5985598, at *17 (citing *Prasco*, 537 F.3d

at 1341).   Moreover, prior to his elevation to the Federal Circuit, Judge Stark concluded that a patentee's hypothetical threats to "act aggressively" and "sue" did not justify jurisdiction because it had not actually conducted any infringement analysis as to that patent.  *Innovative Therapies*, 2008 WL 2746960, at *8.

The fifth factor, "the patent holder's history of enforcing the patent at issue," weighs against jurisdiction.  X does not allege that the Declaratory Judgment Patents have ever been previously litigated.  They have not.  Proffitt Decl. ¶ 7.  Indeed, as noted above Adeia has never ████████ ████████████████████████████████.  *Id.*

The sixth factor, "whether the patent holder's threats have induced the alleged infringer to change its behavior," weighs against jurisdiction. In considering this factor, the Federal Circuit examines whether the infringer changed its product due to the threat posed by the patent.  *Myriad*, 689 F.3d at 1321 (finding jurisdiction where "Myriad's active enforcement of its patent rights forced Dr. Ostrer . . . to cease performing the challenged BRCA testing services, leaving Myriad as the sole provider of BRCA clinical testing to patients in the United States.").  X's Complaint alleges only that Adeia has made a "new focus on social media technology." Compl. ¶ 34.  Even assuming that is true, X does not allege that it has made any changes to its commercial activities as a result of the Declaratory Judgment Patents.  In addition, although X implies in its Complaint that it "ceased making royalty payments under the PLA" *after* Adeia filed its state court suit, Compl. ¶ 28, X in fact stopped making payments in the third quarter of 2022, a year *before* Adeia filed suit.

The seventh factor, "the number of times the patent holder has contacted the alleged infringer," weighs against jurisdiction.  In evaluating this factor, the Federal Circuit looks to whether the patent owner proactively contacted the accused infringer regarding the declaratory judgment patent.  *See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1364 (Fed. Cir. 2009) ("Acceleron took the affirmative step of twice contacting HP directly, making an implied assertion of its rights under the '021 patent against HP's Blade Server products . . . .").  Here, Adeia has never contacted X regarding the Declaratory Judgment Patents.  X's Complaint is devoid of any details regarding the discussions between the parties, only that the parties engaged in "failed license negotiations" and, "[b]ased on the parties' recent communications, X believes the parties have

1   reached an impasse with respect to any future licensing of Adeia's patents." Compl. ¶ 29. Even if

2   these facts were assumed to be true, they do not support jurisdiction here, and it is X's burden to

3   plead the requisite facts to support jurisdiction. *Matthews Int'l*, 695 F.3d at 1328 ("The party

4   seeking to establish declaratory judgment jurisdiction bears the burden of demonstrating that an

5   Article III case or controversy exists at the time the claim for declaratory relief is filed.").

6       The ninth factor, "whether the patent holder refused to give assurance it will not enforce the

7   patent," also does not help X. It is Adeia's position that X presently has a license to the patents

8   under the PLA. Ex. 2 (Adeia Compl.) ¶ 7. Moreover, as discussed above, the parties have never

9   even discussed the Declaratory Judgment Patents, and Adeia has never taken a position as to whether

10  X uses the Declaratory Judgment Patents. Proffitt Decl. ¶¶ 4–5. The Federal Circuit has held that

11  "[a] patentee has no obligation to spend the time and money to test a competitor's product nor to

12  make a definitive determination, at the time and place of the competitors' choosing, that it will never

13  bring an infringement suit. . . . Thus, though a [patentee's] failure to sign a covenant not to sue is

14  one circumstance to consider in evaluating the totality of the circumstances, it is not sufficient to

15  create an actual controversy . . . ." *Prasco*, 537 F.3d at 1341 (finding no declaratory judgment

16  jurisdiction where patentee never accused the plaintiff of infringement); *see also Qualcomm*, 2017

17  WL 5985598, at *18 (no jurisdiction despite lack of "assurance" by the patentee).

18      Here, even more so than in *Qualcomm*, the overwhelming balance of the factors counsels

19  strongly against finding subject matter jurisdiction, where the Declaratory Judgment Patents have

20  never been the subject of any licensing discussions between Adeia and X, and Adeia has never taken

21  the position that X infringes the Declaratory Judgment Patents.

## 2.   There Are No "Adverse Legal Interests" As To The Declaratory Judgment Patents

24      X's Complaint also fails because it does not establish any adverse legal interests as to the

25  Declaratory Judgment Patents. The critical question here is whether "there are sufficient 'adverse

26  legal interests' between the parties such that a favorable determination as to the [declaratory

27  judgment patents] will affect the legal relationship between the parties and adequately redress any

28  injuries." *Qualcomm*, 2017 WL 5985598, at *20.

1    While courts have found adverse non-infringement interests when a patent licensee refuses

2    to pay royalties that are expressly tethered to patent infringement or validity of a licensed patent(s),

3    that is not the case when ▮▮▮▮▮ royalty payments are *not* conditioned on the infringement or

4    validity of the licensed patent(s).  *E.g.*, *Verance Corp. v. Digimarc Corp.*, No. CIV.A. 10-831, 2011

5    WL 2182119, at *6 (D. Del. June 2, 2011) (dismissing declaratory judgment action because patent

6    license payments were not "contingent on patent validity or infringement," such that a declaration

7    of non-infringement would not be conclusive of the licensee's obligation to pay), *appeal voluntarily*

8    *dismissed*, 465 F. App'x 934 (Fed. Cir. 2012); *Qualcomm*, 2017 WL 5985598, at *21 (dismissing

9    declaratory judgment claims as to licensees that refused to pay royalties, because "the amount of

10   royalties [owed] . . . are not dependent on whether the [patents] are valid or infringed").

11   Here, the PLA does not condition royalty payments on ▮▮▮▮▮▮▮▮▮▮

12   ▮▮▮.  Rather, the PLA imposes a flat annual fee.  Ex. 1 (PLA) at 14 (imposing "a non-refundable

13   recurring license fee of three million United States dollars (US$3,000,000) for each Agreement Year

14   of the Term" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[5]   As such, a

15   declaration of non-infringement as to the Declaratory Judgment Patents would have no impact on

16   X's obligation to make payments under the PLA.

17   **B.    The Court Should Exercise Its Substantial Discretion To Decline Jurisdiction**

18   "[E]ven if a case or controversy exists, the trial court has significant discretion in

19   determining whether or not to exercise declaratory judgment jurisdiction."  *Matthews Int'l*, 695 F.3d

20   at 1328 n.3; *Wilton*, 515 U.S. at 286 ("Since its inception, the Declaratory Judgment Act has been

21   understood to confer on federal courts ***unique and substantial discretion*** in deciding whether to

22   declare the rights of litigants." (emphasis added)).

23   Courts have identified a wide variety of factors that may be considered in deciding whether

24

25   [5] Licensors and licensees can choose among many different types of royalty structures in patent
     licenses.  One common example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, is a flat fee or lump sum,

26   which is not tied to the licensee's actual use of the licensed technology, and thus provides the benefit
     of administrative efficiency.  Another common example, a running royalty, imposes variable

27   payments based on the licensee's actual sales of infringing products or services.  Those license
     agreements typically require the licensee to provide the licensor with periodic audited sales reports

28   in addition to royalty payments.

to exercise or decline jurisdiction.  For example, courts consider whether the requested judgment would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Minn. Min. & M'fg*, 929 F.2d at 673.  Courts have also considered "[w]hether the declaratory action will settle all aspects of the controversy," *Neilmed Prod., Inc. v. Med-Sys., Inc.*, 472 F. Supp. 2d 1178, 1180 (N.D. Cal. 2007) (quoting *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)), and declined to exercise jurisdiction where declaratory judgment suits are brought not to settle a controversy, but for strategic reasons. *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 981 (Fed. Cir. 1993) (affirming district court's declination of jurisdiction, upon "finding that this action was brought for marketing and competitive purposes").

Abstention is more than warranted under the facts of this case.  X is presently licensed to ▮▮▮▮▮▮ Adeia's patents under the PLA.  Ex. 1 (PLA) at Schedules (pp. 7–77).  The four Declaratory Judgment Patents thus represent only a ▮▮ fraction of the licensed patent portfolio—a fraction that Adeia has never previously suggested that X actually uses or threatened either X ▮▮ ▮▮▮▮▮▮ with a patent infringement suit.  Proffitt Decl. ¶¶ 4–5, 7.  Moreover, as noted, although X has purported to unilaterally terminate the PLA, Adeia has ***not*** terminated it, and believes that it is still in full force and effect.  Ex. 2 (Adeia Compl.) ¶ 7; Ex. 3 (Adeia 1/4/2024 Ltr.).

Even if X's infringement of the Declaratory Judgment Patents were in dispute (and it is not) and X were to prevail in this action, that would resolve at most only one small sliver of the potential universe of future disputes between the parties—and it would not even resolve the only actual dispute between the parties at this time: that is, whether X is obligated to pay the royalties that it agreed to pay under the PLA (which is the subject of a current state court action).  As such, this suit would not "settle all aspects of the controversy" or "serve a useful purpose in clarifying the legal relations" between the parties.  The only "uncertainty" that X's Complaint identifies relates to X's apparent refusal to recognize the license it has to Adeia's patents.  But a declaratory judgment of noninfringement sought as to patents that Adeia has ***never once*** indicated it intended to assert against X could not possibly "terminate and afford relief" from X's alleged uncertainty.

Indeed, particularly given that Adeia has never accused X of infringing the Declaratory Judgment Patents, X's Complaint appears to be calculated not to resolve the parties' disputes, but

1    to gain leverage in its bid to avoid paying the royalties it owes under the PLA. *Qualcomm*, 2017

2    WL 5985598, at *23 ("'declin[ing] to invest judicial time and resources in a declaratory action' that

3    requests only piecemeal relief that does not resolve the disputes between the party in a worthwhile

4    way"); *Cepheid*, 2013 WL 184125, at *13 ("The Court finds it appropriate to decline to exercise

5    jurisdiction over Plaintiff's claim for declaratory relief on the '155 patent, as it appears from the

6    facts in this case that Plaintiff took specific actions to attempt to manufacture a controversy over the

7    '155 patent, possibly to gain leverage in the dispute over the '375 patent.").

8    **V.    CONCLUSION**

9          There is no case or controversy between Adeia and X relating to the Declaratory Judgment

10   Patents.  X does not contend that Adeia has ever alleged that X infringes these patents, because

11   Adeia has not.  X does not contend that Adeia terminated the PLA, because Adeia did not.  X does

12   not even contend that Adeia has threatened patent infringement litigation against it, because Adeia

13   has not.  Instead, X, having chosen to stop paying royalties under the PLA following an acquisition,

14   has unilaterally proclaimed that the PLA is terminated, and then on the basis of its own purported

15   termination is now claiming that it anticipates litigation from Adeia on patents about which Adeia

16   has never spoken to X.  This is not a justiciable case or controversy—it is at best part of a strategic

17   attempt to avoid paying agreed-to royalties—royalties that do not depend in any way on whether X

18   is using any of the Declaratory Judgment Patents.

19         Accordingly, there is no subject matter jurisdiction, and the complaint should be dismissed

20   pursuant to Fed. R. Civ. P. 12(b)(1).  Moreover, even if subject matter jurisdiction existed, a

21   discretionary dismissal would be appropriate, as the piecemeal relief requested by X would be a

22   waste of judicial and party resources.

23

24

25

26

27

28

Dated: January 16, 2024

Respectfully submitted,

By:     */s/ Charlotte J. Wen*
            Charlotte J. Wen

Benjamin W. Hattenbach (SBN 186455)
Charlotte J. Wen (SBN 313572)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:  (310) 277-1010
bhattenbach@irell.com
cwen@irell.com

A. Matthew Ashley (SBN 198235)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California  92660
Telephone: (949) 760-0991
mashley@irell.com

*Counsel for Defendants*
ADEIA INC., ADEIA MEDIA LLC,
ADEIA GUIDES INC.