KEKER, VAN NEST & PETERS LLP
DAVID SILBERT - #173128
dsilbert@keker.com
SHARIF E. JACOB - #257546
sjacob@keker.com
KRISTEN E. LOVIN - #293688
klovin@keker.com
TAYLOR REEVES - #319729
treeves@keker.com
EMILY A. HASSELBERG - # 326990
ehasselberg@keker.com
AMRUTHA DORAI - #352697
adorai@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Plaintiff X CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

X CORP., a Nevada corporation,

Plaintiff,

v.

ADEIA INC., a Delaware corporation; ADEIA MEDIA LLC, a Delaware limited liability company; and ADEIA GUIDES INC. (f/k/a ROVI GUIDES INC.), a Delaware corporation,

Defendant.

Case No. 3:23-cv-06151-TLT

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Date: April 9, 2024
Time: 2:00 p.m.
Dept.: Courtroom 9 – 19th Floor
Judge: Hon. Judge Trina L. Thompson

Date Filed: November 28, 2023
Trial Date: None Set

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Adeia's business model is acquiring and licensing patents. ..... 2

B. X enters into a patent licensing agreement with Adeia, which Adeia then breaches. ..... 3

C. X brings suit for declaratory judgment. ..... 3

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 4

A. The Court has subject matter jurisdiction over X's declaratory judgment claims. ..... 4

1. Adeia's actions fulfill the "affirmative act" requirement for substantial controversy ..... 5

2. X and Adeia hold "adverse legal interests" as to the patents-in-suit. ..... 11

B. The Court should exercise its discretion to resolve these claims. ..... 13

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ameranth, Inc. v. ChowNow, Inc.*,
2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) ....................13

*Ameranth, Inc. v. Splick-It, Inc.*,
2017 WL 11422187 (S.D. Cal. Aug. 18, 2017) ....................13

*Applera Corp. v. Mich. Diagnostics, LLC*,
594 F. Supp. 2d 150 (D. Mass. 2009) ....................9

*Arris Grp., Inc. v. Brit. Telecomms. PLC*,
639 F.3d 1368 (Fed. Cir. 2011)....................12

*Ass'n for Molecular Pathology v. USPTO*,
689 F.3d 1303 (Fed. Cir. 2012)....................5

*Baseload Energy, Inc. v. Roberts*,
2012 WL 13047523 (D.D.C. Mar. 27, 2012)....................6, 7, 9, 12

*Beverly Hills Teddy Bear Co., Inc. v. GennComm, LLC*,
2020 WL 7049537 (C.D. Cal. Oct. 1, 2020).................... *passim*

*Brawley v. Crosby Rsch. Found.*,
73 Cal. App. 2d 103 (Ct. App. 1946)....................12

*C-Innovation, LLC v. Trendsetter Eng'g, Inc.*,
2021 WL 253858 (E.D. La. Jan. 26, 2021)....................9, 11

*C.R. Bard, Inc. v. Schwartz*,
716 F.2d 874 (Fed. Cir. 1983)....................7, 8

*Capo, Inc. v. Dioptics Med. Prod., Inc.*,
387 F.3d 1352 (Fed. Cir. 2004)....................13, 14, 15

*Cepheid v. Roche Molecular Sys., Inc.*,
2013 WL 184125 (N.D. Cal. Jan. 17, 2013) ....................6

*Ebates Performance Mktg., Inc. v. MyMail, Ltd.*,
2021 WL 121130 (N.D. Cal. Jan. 13, 2021) ....................6

*Hero Nutritionals, Inc. v. Vitastix, Inc.*,
2010 WL 11580048 (C.D. Cal. Apr. 23, 2010) .................... *passim*

*Hewlett Packard Enter. Co. v. Intell. Ventures I LLC*,
2022 WL 17403485 (D. Del. Dec. 2, 2022)....................9

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....................4, 5

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
518 F.3d 897 (Fed. Cir. 2008)....................10

*Miotox LLC v. Allergan, Inc.*,
2015 WL 2084493 (C.D. Cal. May 5, 2015) ....................7

*Powertech Tech. Inc. v. Tessera, Inc.*,
660 F.3d 1301 (Fed. Cir. 2011)....................12, 13

*Prasco, LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008)....................11

*In re Qualcomm Litig.*,
2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) ....................8, 9, 10, 13

*Rovi Corp.v. Hulu LLC*,
2012 WL 261982 (D. Del. Jan. 27, 2012)....................7, 10

*Rovi Corp. v. Roku, Inc.*,
2012 WL 2578061 (N.D. Cal. May 1, 2012) ....................10

*Rovi Guides, Inc. v. Comcast Corp.*,
2018 WL 1466471 (C.D. Cal. Feb. 8, 2018)....................10

*SanDisk Corp. v. STMicroelectronics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007).................... *passim*

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
497 F.3d 1271 (Fed. Cir. 2007)....................14

*Twitter, Inc. v. VoIP-Pal.com, Inc.*,
2022 WL 2905065 (N.D. Cal. July 22, 2022)....................4

*Verance Corp. v. Digimarc Corp. (Delaware)*,
2011 WL 2182119 (D. Del. June 2, 2011), *dismissed*, 465 F. App'x 934 (Fed. Cir. 2012) ....................13

**Statutes**

Cal. Civ. Code § 1655....................12, 13

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) ....................4

Plaintiff X Corp. ("X") respectfully submits the following opposition to Defendants Adeia Inc., Adeia Media LLC, and Adeia Guides Inc.'s (collectively, with their predecessors-in-interest, "Adeia") Motion to Dismiss X's Complaint for Declaratory Judgment.

## I. INTRODUCTION

There is no reasonable dispute that Adeia intends to sue X for patent infringement. Adeia previously demanded that X take a license to a number of its patents—including the four patents-in-suit in this action—and then breached that license by wrongfully disclosing that X was an Adeia licensee, along with other confidential details of the agreement. As a result of Adeia's breaches, X terminated the license—as the license agreement expressly authorized it to do—and X is now operating without any license from Adeia.

By filing its related state-court action against X relating to payments under the license, Adeia has made clear that it will pursue litigation against X to collect licensing revenues. And that comes as no surprise. Adeia is an intellectual-property licensing entity whose entire business model revolves around acquiring and licensing patents. Adeia does not sell any products or services. Instead, as it has admitted, it maximizes the value of its portfolio by threatening targets with litigation and by litigating against parties who refuse to pay. And X believes it does not need any license from Adeia because Adeia has no legitimate patent rights—including under the patents-in-suit—that cover X's products and services. Thus, an infringement action from Adeia is guaranteed.

Indeed, despite the carefully chosen language in its motion, Adeia has refused to provide any assurance that it will *not* sue X for infringing the patents-in-suit. On the contrary, by couching its argument in terms of X's apprehension of suit, while refusing to simply come out and state that it will not sue, Adeia's motion only confirms its true intentions. What is at issue in this motion, therefore, is not whether there will be a lawsuit between the parties—which is a certainty—but where that lawsuit will proceed. Adeia hopes to sue X in a distant forum to drive up its litigation costs, while X prefers that the litigation proceed in this district, where both parties are based. Under these circumstances, X "need not risk a suit for infringement . . . before seeking a declaration of its legal rights." *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372,

1381 (Fed. Cir. 2007).

There is every reason for the Court to adjudicate this actual and ripe dispute between the parties. Accordingly, the Court should deny Adeia's motion and exercise its jurisdiction to resolve this imminent and substantial dispute between the parties.

## II. BACKGROUND

### A. Adeia's business model is acquiring and licensing patents.

Defendant Adeia is an intellectual property licensing platform. It does not sell products or services, but instead acquires patents in its portfolio and licenses those patents to media and other companies. Compl. ¶ 24. Adeia's business model includes "expend[ing] significant time and effort identifying users and potential users of [its] inventions and negotiating license agreements with companies, including those that may be reluctant to pay for licenses to [its] IP." *Id.* ¶ 32 (quoting Adeia 10-K). Adeia admits that it "ha[s] in the past commenced, and may in the future, commence legal or administrative action against the third party if they refuse to enter into a license agreement with us." *Id.* Adeia has further stated in public filings: "[i]f we are unable to secure license agreements on favorable terms through negotiations, or if licensees do not comply with the terms of their licenses, we might have to file new litigation to enforce our rights." *Id.* ¶ 33.

Adeia has recently turned the focus of its licensing efforts to social media technology. In an interview that took place in or around October 2022, Adeia's CEO said that Adeia "expects to expand further beyond traditional pay-TV, an industry that's in decline as service operators continue to see their subscriber bases shrink amid the acceleration of pay-TV cord-cutting." *Id.* ¶ 34.[1] Instead, he said, "the media part of the business will continue to expand into tech areas such as streaming and over-the-top (OTT) video and social media." *Id.*

As of Adeia's last Form 10-K (December 2022), Adeia and/or its affiliates were engaged in six different patent infringement actions that they initiated. *Id.* ¶ 37 (quoting Adeia 10-K). And Adeia's corporate predecessors have a long history of asserting their patents in court. *Id.* ¶

[1] Citing Jeff Baumgartner, *Adeia CEO on what follows the spin-out from Xperi*, LightReading (Oct. 3, 2022), https://www.lightreading.com/video-broadcast/adeia-ceo-on-what-follows-the-spin-outfrom-xperi.

38 (collecting cases).

**B. X enters into a patent licensing agreement with Adeia, which Adeia then breaches.**

Plaintiff X, formerly known as Twitter, is the leading social media platform for open communication. *Id.* ¶ 23. On April 25, 2019, X entered a patent licensing agreement (hereinafter, the "PLA") with several of Adeia's predecessors, which granted X a license to a number of Adeia patents, including the four patents-in-suit in this action. *Id.* ¶ 26. The PLA prohibited any public disclosure identifying X as a licensee of Adeia. *Id.* Ex. 1. Nonetheless, on August 7, 2023, Adeia sued X for breach of the PLA in Santa Clara Superior Court. In its complaint, Adeia disclosed substantive terms of the licensing agreement with X in violation of the PLA. *Id.* ¶ 27. Following Adeia's breach of its confidentiality obligations, X provided notice to Adeia that it was terminating the PLA in a letter dated November 28, 2023. *Id.* ¶ 28. X has ceased making royalty payments under the PLA. *Id.*

**C. X brings suit for declaratory judgment.**

X does not believe there is any reason for it to license Adeia's patents because Adeia's patents, including the patents-in-suit, do not cover any of X's products and services. *Id.* For its part, Adeia has given every indication that it will imminently sue X for patent infringement. Not only is Adeia's business model centered around infringement suits for patents in its portfolio, but Adeia has already demonstrated willingness to sue X for breach of the PLA.

Faced with the imminent threat that Adeia would mount a baseless lawsuit against it for patent infringement, on November 28, 2023, X brought the present action, seeking declaratory judgment that it does not infringe the following Adeia patents, which were previously licensed under the PLA:

- **U.S. Patent No. 10,694,137** ("the '137 patent") is titled "Systems and Methods for Resizing Content Based on a Relative Importance of the Content."
- **U.S. Patent No. 10,951,563** ("the '563 patent") is titled "Enhancing a Social Media Post with Content that is Relevant to the Audience of the Post."
- **U.S. Patent No. 11,288,582** ("the '582 patent") is titled "Systems and Methods for Providing Media Content Recommendations."

- **U.S. Patent No. 11,756,071** ("the '071 patent") is titled "Managing Impressions of an Advertisement Campaign."

Adeia moved to dismiss, claiming that the Court does not have subject matter jurisdiction over X's claim for declaratory relief.[2]

## III. LEGAL STANDARD

To determine whether a plaintiff has Article III standing to bring a declaratory judgment action, courts look to "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant relief." *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 118 (2007) (internal quotation marks and citations omitted). This is an "all the circumstances" test, where courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id*. at 136. To satisfy the case or controversy requirement in the declaratory judgment context, the parties' dispute must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Twitter, Inc. v. VoIP-Pal.com, Inc*., 2022 WL 2905065, at *2 (N.D. Cal. July 22, 2022) (denying motion to dismiss suit for declaratory judgment as to non-infringement). Post-*MedImmune*, the "determinative inquiry is not whether the declaratory judgment plaintiff faced a reasonable threat of imminent suit." *See Hulu LLC v. Rovi Corp.*, WL 3535031, at *1 (N.D. Cal. Aug. 16, 2017). Rather, "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *SanDisk*, 480 F.3d at 1381.

## IV. ARGUMENT

### A. The Court has subject matter jurisdiction over X's declaratory judgment claims.

X has sufficiently alleged facts that "under all the circumstances, show that there is a

---

[2] Adeia purports to base its motion to dismiss on Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). However, it only makes arguments under Rule 12(b)(1).

substantial controversy, between parties having adverse legal interests," to support declaratory judgment jurisdiction. *MedImmune*, 549 U.S. at 127. ***First***, a substantial controversy exists between the parties based on Adeia's conduct, including filing a state-court lawsuit against X based on its alleged breach of the PLA. ***Second***, the parties have adverse legal interests because Adeia can and almost certainly will sue X for patent infringement. The Court therefore can and should exercise jurisdiction over X's claims to resolve this immediate dispute between the parties.

### 1. Adeia's actions fulfill the "affirmative act" requirement for substantial controversy.

Courts determine the existence of a substantial controversy giving rise to declaratory judgment jurisdiction based on a fact-driven, "totality of the circumstances" analysis. *See SanDisk*, 480 F.3d at 1377. Substantial controversy requires "an affirmative act by the patentee related to the enforcement of his patent rights." *See Ass'n for Molecular Pathology v. USPTO*, 689 F.3d 1303, 1318 (Fed. Cir. 2012). This requirement "may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *See Sandisk*, 480 F.3d at 1382. Some California district courts consider the following thirteen discretionary factors in determining whether the patent holder has made an "affirmative act" sufficient to create a substantial controversy:

> (1) the strength of threatening language in communications between the parties; (2) the depth and extent of infringement analysis conducted by the patent holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of times the patent holder has contacted the alleged infringer; (8) whether the patent holder is a holding company with no income other than enforcing patent rights; (9) whether the patent holder refused to give assurance it will not enforce the patent; (10) whether the patent holder has identified a specific patent and specific infringing products; (11) the extent of the patent holder's familiarity with the product prior to suit; (12) the length of time that transpired after the patent holder asserted infringement; and (13) whether communications initiated by the plaintiff appear as an attempt to create a controversy.

*Ebates Performance Mktg., Inc. v. MyMail, Ltd.*, 2021 WL 121130, at *6 (N.D. Cal. Jan. 13, 2021). However, "[n]o one factor is dispositive in determining whether a declaratory judgment plaintiff has standing." *Cepheid v. Roche Molecular Sys., Inc.*, 2013 WL 184125, at *11 (N.D. Cal. Jan. 17, 2013).

Here, the factors overwhelmingly support finding jurisdiction. Adeia's entire business is built around patent licensing and lawsuits. *See* Compl. ¶¶ 24, 32-33. Its negotiations with X starting in 2018 led to X entering a license in 2019 for various Adeia patents. *See id.* ¶ 26. Adeia has already sued X in another venue to enforce that Patent License Agreement. *See id.* ¶ 27. And while Adeia spills much ink on the fact that it has not yet explicitly threatened to sue X on these social media patents, it previously licensed those patents to X, and it has carefully avoided providing X with assurances that it will not sue.

As a threshold matter, Adeia's state-court lawsuit is a quintessential "affirmative act" that creates declaratory judgment jurisdiction. Specifically, courts routinely find that declaratory judgment jurisdiction exists where a patent licensee ceases to make payments under a patent license agreement. *See Baseload Energy, Inc. v. Roberts*, 2012 WL 13047523, at *6 (D.D.C. Mar. 27, 2012) (finding declaratory judgment jurisdiction existed where licensee did not make license agreement payments). Courts are particularly likely to find jurisdiction where the patent holder has brought a separate breach of contract suit to enforce this agreement. *See Hero Nutritionals, Inc. v. Vitastix, Inc.*, 2010 WL 11580048, at *4 (C.D. Cal. Apr. 23, 2010) (finding that substantial controversy existed where patent holder brought separate suit alleging breach of license agreement); *Beverly Hills Teddy Bear Co., Inc. v. GennComm, LLC*, 2020 WL 7049537, at *2 (C.D. Cal. Oct. 1, 2020) (same).

Jurisdiction exists under these circumstances because the failure to pay royalties makes the patent licensee vulnerable to a patent infringement suit, and the filing of a breach of contract

suit "shows a willingness by [the patent holder] to enforce his patent rights." *See C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 881 (Fed. Cir. 1983). Here, substantial controversy exists because, like the plaintiffs in *Baseload*, *Hero Nutritionals*, *Bard*, and *Beverly Hills Teddy*, X is vulnerable to patent infringement suit because it has ceased making payments under a patent license agreement. Moreover, here, X has terminated its PLA with Adeia due to Adeia's material breach through disclosure of confidential contract terms. *See* Compl. ¶¶ 27-28. Accordingly, Adeia could "at any time take action … by bringing an infringement suit." *See Bard*, 716 F. 2d at 881. And as in *Hero Nutritionals*, *Bard*, and *Beverly Hills Teddy*, Adeia has already demonstrated its willingness to take action to enforce its patent rights through the state court suit.

Jurisdiction is appropriate even though X does not seek declaratory judgment as to all patents covered by the PLA. *See Miotox LLC v. Allergan, Inc.*, 2015 WL 2084493, at *5 (C.D. Cal. May 5, 2015) (rejecting argument that declaratory judgment claims were "not yet ripe for adjudication" because the plaintiff had "not challenged the validity or infringement of *all* the New Patents"). The patents-in-suit, which concern social media functions similar to those performed by X, and which were previously licensed under the PLA, are the most likely targets of an infringement action by Adeia. *See* Compl. ¶¶ 51-52, 56, 60-61, 66 (describing social media functionalities of the patents-in-suit). Resolution as to these patents would settle the substantial controversy between X and Adeia as to these patents, regardless of any other patents covered by the PLA. Moreover, despite Adeia's fixation on the fact that it has not explicitly threatened X with an infringement suit as to the patents-in-suit, *see, e.g.*, MTD at 14, the operative test is *not* whether X has a reasonable apprehension of suit by Adeia. *See Hulu*, WL 3535031, at *1. Rather, the inquiry is whether Adeia's actions have put X "in the position of either pursuing arguably illegal behavior or abandoning that which [it] claims a right to do." *See Sandisk*, 480 F.3d at 1382. Here, X claims a right to operate its platform without any license from Adeia,

while Adeia insists that it needs a license, and is poised to sue if it does not take one.

While Adeia suggests that the present case is "nearly identical" to *Qualcomm*,[3] Adeia itself acknowledges that, in that case, "Apple and Qualcomm engaged in **unsuccessful** patent licensing negotiations." *See* MTD at 6 (emphasis added). The Qualcomm case—which did not involve a license agreement, a failure to pay royalties on a license agreement, or a separate suit alleging breach of a license agreement—is therefore inapposite. *See Qualcomm*, 2017 WL 5985598, at *13 (describing unsuccessful licensing negotiations between Apple and Qualcomm). Moreover, Apple and Qualcomm are operating companies with very significant market activities, whereas Adeia is a patent-enforcement entity whose sole business is to negotiate license agreements and sue companies who refuse to pay. *See* Compl. ¶ 24. And unlike in *Qualcomm*, here Adeia has already sued X to collect licensing revenues. *See id*. ¶ 27.

Application of the thirteen discretionary factors listed above also supports the existence of declaratory judgment jurisdiction.

First, Adeia effectively admits that the fourth factor (prior litigation between the parties) and the eighth factor (whether the patent holder is a holding company with no income other than enforcing patent rights) weigh in favor of jurisdiction. *See* MTD at 10. Adeia's sole income is licensing patents and bringing litigation to enforce those licenses. *See* Compl. ¶ 24. To that end, it is actively engaged in a lawsuit against X to enforce the parties' PLA. *See id*. ¶ 27. Courts routinely consider such suits to weigh in favor of jurisdiction, as they demonstrate that the patent holder "has taken affirmative steps to recover the royalty payments associated with the licensing of its Patents." *See Beverly Hills Teddy*, 2020 WL 7049537, at *2; *see also Hero Nutritionals*, 2010 WL 11580048, at *4 (existence of separate suit over license agreement royalties weighed in favor of declaratory judgment jurisdiction); *Bard*, 716 F.2d at 881 (same). Adeia's state court

[3] *See In re Qualcomm Litig*., 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017).

suit to recover PLA royalties thus clearly supports declaratory judgment jurisdiction, because it demonstrates Adeia's eagerness to enforce the patent rights at issue in this case. *See* Compl. ¶ 27.

The tenth factor, whether the patent holder has identified a specific patent and specific infringing products, also supports jurisdiction. In its complaint, X identified four specific patents over which it seeks a declaratory judgment of non-infringement. *See* Compl. ¶¶ 41-48. Adeia suggests that X has not alleged a sufficiently specific dispute, citing *Qualcomm*, 2017 WL 5985598, and *Applera Corp. v. Mich. Diagnostics, LLC*, 594 F. Supp. 2d 150, 160 (D. Mass. 2009). *See* MTD at 8. But the *Applera* plaintiffs sought declaratory judgment of non-infringement as to 62 patents, and the *Qualcomm* plaintiffs sought declaratory judgment as to an entire patent portfolio. *See Qualcomm*, 2017 WL 5985598, at *18 (S.D. Cal. Nov. 8, 2017); *Applera*, 594 F. Supp. 2d at 154. In contrast, X seeks a narrow judgment as to specific patents that were previously licensed under the PLA and that are likely targets of infringement actions by Adeia. Additionally, X need not identify any specific infringing products (nor could it since it does not infringe). But the product that Adeia will target with a patent infringement suit is X's social media platform. And despite Adeia's complaint that the parties have not exchanged claim charts for the patents-in-suit, *see* MTD at 7-8, this is far from a requirement for declaratory judgment jurisdiction. *See, e.g*, *C-Innovation, LLC v. Trendsetter Eng'g, Inc.*, 2021 WL 253858, at *10 (E.D. La. Jan. 26, 2021) (finding jurisdiction existed where plaintiff had been compelled to enter license agreement, without any discussion of claim charts); *Baseload*, 2012 WL 13047523, at *6 (finding declaratory judgment jurisdiction existed where licensee did not make license agreement payments, again with no mention of claim charts); *Hero Nutritionals*, 2010 WL 11580048, at *4 (same). "[P]resentation of claim charts as to a patent [is] not required before subject matter jurisdiction can attach." *Hewlett Packard Enter. Co. v. Intell. Ventures I LLC*, 2022 WL 17403485, at *4 (D. Del. Dec. 2, 2022) (finding declaratory judgment jurisdiction

existed where no claim charts were presented).

The fifth factor, the patent holder's history of enforcing the patent at issue, also weighs in favor of finding an affirmative act. Patent litigation by the patent holder against competitors of the declaratory judgment plaintiff supports jurisdiction, as does the existence of a "systematic licensing and litigation strategy." *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 899-901 (Fed. Cir. 2008) (finding jurisdiction existed where defendant's "recent public statements and annual reports . . . confirm[ed] its intent to continue an aggressive litigation strategy."); *see also Hulu*, 2017 WL 3535031, at *1 (finding jurisdiction over declaratory judgment action where defendant had previously been adverse to Hulu competitors Roku and Netflix in patent litigation). Here, these factors weigh in favor of declaratory judgment jurisdiction because Adeia, like the defendants in *Hulu* and *Micron*, pursues an aggressive licensing and litigation strategy, including through litigation against X's competitors. *See* Compl. ¶¶ 32, 38. For example, Adeia and its predecessors have brought patent suits against numerous other media companies such as Roku, Hulu, and Comcast. *See, e.g., Rovi Corp. v. Roku, Inc.*, 2012 WL 2578061 (N.D. Cal. May 1, 2012); *Rovi Corp.v. Hulu LLC*, 2012 WL 261982 (D. Del. Jan. 27, 2012); *Rovi Guides, Inc. v. Comcast Corp.*, 2018 WL 1466471 (C.D. Cal. Feb. 8, 2018).

Factor nine—whether the patent holder refused to give assurance it will not enforce the patent—similarly supports declaratory judgment jurisdiction. Adeia has carefully avoided providing any assurance that it will not bring an infringement suit based on the patents-in-suit, including in its declarations submitted in support of its motion to dismiss. Accordingly, this factor weighs in favor of jurisdiction. *See Beverly Hills Teddy*, 2020 WL 7049537, at *2 (finding declaratory judgment jurisdiction where defendant did not dispute in submitted declarations plaintiff's belief in an impending patent infringement suit). In fact, Adeia's cited cases acknowledge that this factor weighs in favor of jurisdiction. *See Qualcomm*, 2017 WL 5985598,

at *18; *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008). Given Adeia's assertion of its patent rights through the filing of the state court suit, its failure to provide any assurance regarding the patents-in-suit is highly revealing of its intentions. *Cf. Prasco*, 537 F.3d at 1341 (finding failure to sign a covenant insufficient to support jurisdiction where the defendant had "not asserted any rights against [the plaintiff] related to the patents nor taken any affirmative actions"). And unlike in *Prasco*, where the parties competed against each other in the market, here Adeia is a patent-assertion entity whose sole business is to enforce its alleged patent rights. *See* 537 F.3d at 1334; Compl. ¶ 24.

Finally, factors relating to the tenor of communications between parties—including factor one (the strength of threatening language in communications between the parties), factor seven (the number of times the patent holder has contacted the alleged infringer), and factor twelve (the length of time that transpired after the patent holder asserted infringement)—also weigh in favor of jurisdiction. X and Adeia entered into the PLA because Adeia demanded it and X acceded, not because X wished to pay royalties it believes it does not owe. And now, after Adeia's breach, X has terminated the PLA, leaving itself exposed. X is a clear focus of Adeia's enforcement activities, which supports jurisdiction. *See C-Innovation*, 2021 WL 253858, at *9 (finding declaratory judgment jurisdiction where plaintiff was compelled to enter into license agreement through threats of litigation).

In sum, considering the totality of the circumstances, X has alleged an affirmative act by Adeia sufficient to give rise to declaratory judgment jurisdiction.

**2. X and Adeia hold "adverse legal interests" as to the patents-in-suit.**

X has also alleged sufficient adverse legal interests between the parties as to the patents-in-suit. An adverse legal interest "requires a dispute as to a legal right—for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened

to bring." *See Arris Grp., Inc. v. Brit. Telecomms. PLC*, 639 F.3d 1368, 1374 (Fed. Cir. 2011); *see also Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1306 (Fed. Cir. 2011). Here, adverse legal interests exist between the parties, because Adeia could and most likely will bring a suit for patent infringement against X. *See Hero Nutritionals*, 2010 WL 11580048, at *4 (finding that adverse legal interests existed in declaratory judgment action for patent non-infringement and invalidity where licensee refused to make royalty payments). Moreover, Adeia "has directly, albeit implicitly, conveyed to [X] that it needs a license to use the technology covered by [its] patents" by entering into the PLA at all. *See Baseload*, 2012 WL 13047523, at *5.

However, as explained in X's Complaint, X does not infringe the patents-in-suit, even though it previously took a license to them. *See* Compl. ¶¶ 50, 55, 59, 65. Unless Adeia agrees to grant X a binding and comprehensive covenant not to sue or other similar assurance, the parties have adverse legal interests in these patents. *See Beverly Hills Teddy*, 2020 WL 7049537, at *2 (finding sufficient adverse legal interests to support jurisdiction where patent holder provided no assurances it would not sue).

Adeia argues that PLA payments are not conditioned on the infringement or validity of the licensed patents, resulting in no adverse legal interests. However, under California contract law, "[s]tipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention." Cal. Civ. Code § 1655; *see also Brawley v. Crosby Rsch. Found.*, 73 Cal. App. 2d 103, 112 (Ct. App. 1946) (implying contract terms necessary to conform with industry usage in case involving contract for patent rights). Adeia demanded—and prior to terminating the PLA, X paid—millions of dollars in royalties for the licenses granted under the PLA. The only plausible reason is that Adeia contends that X needs a license to the licensed patents, or else it will infringe them. Thus, California contract interpretation principles—and simple common sense—dictate that the PLA

establishes adverse legal interests.

In any case, even the existence of a legitimate dispute over contract interpretation precludes dismissal. *See Powertech*, 660 F.3d at 1309-11 (denying motion to dismiss declaratory judgment action based on lack of subject matter jurisdiction following argument by plaintiffs regarding an implied contingency term, noting that "no discovery into the proper interpretation of the license agreement has been conducted"); *see also Ameranth, Inc. v. Splick-It, Inc.*, 2017 WL 11422187, at *3 (S.D. Cal. Aug. 18, 2017); *Ameranth, Inc. v. ChowNow, Inc.*, 2021 WL 3686056, at *10 (S.D. Cal. Aug. 19, 2021). Moreover, Adeia's reliance on *Verance* and *Qualcomm* is displaced. *Qualcomm* explicitly acknowledges that the parties had failed to present any dispute as to contract interpretation, and that dismissal would be inappropriate if they had. *See Qualcomm*, 2017 WL 5985598, at *21. And *Verance* interpreted the license agreement at issue under Delaware contract law, not California law and the mandates of Cal. Civ. Code § 1655. *See Verance Corp. v. Digimarc Corp. (Delaware)*, 2011 WL 2182119, at *6 (D. Del. June 2, 2011), *dismissed*, 465 F. App'x 934 (Fed. Cir. 2012) (noting that "the enforceability of the License Agreement turns on state contract law"). Here, by contrast, adverse legal interests exist as to the patents-in-suit; or, at the very least, legitimate disputes over interpretation of the PLA under state law preclude dismissal.

**B. The Court should exercise its discretion to resolve these claims.**

Although district courts have discretion in declaratory judgment actions to dismiss the case, "there are boundaries to that discretion." *See SanDisk*, 480 F.3d at 1383 (finding dismissal improperly granted where a justiciable controversy existed between parties). The district court must have a "sound basis for refusing to adjudicate an actual controversy." *Capo, Inc. v. Dioptics Med. Prod., Inc.*, 387 F.3d 1352, 1357 (Fed. Cir. 2004) (finding abuse of discretion by district court in refusing to hear declaratory judgment claims, where plaintiff had stated an actual

controversy).

Here, as explained above, there is a substantial and actual controversy between the parties. X has terminated its PLA with Adeia, making it vulnerable to infringement claims. *See* Compl. ¶ 28. Adeia has already sued X in another venue seeking to enforce its patent rights under the PLA. *See* Compl. ¶ 27. While Adeia complains that the patents-in-suit "represent only a tiny fraction of the licensed patent portfolio," *see* MTD at 14, these patents were previously licensed under the PLA, and are the most likely targets of an infringement action due to their social media functionalities. *See* Compl. ¶¶ 51-52, 56, 60-61, 66 (describing social media functionalities of the patents-in-suit). Moreover, Adeia's position suggests that declaratory judgment jurisdiction could only exist if X sued as to the majority of the patents in Adeia's portfolio, which is not feasible for the parties or the Court. And while Adeia insists that X's fears of an infringement action on these patents are unfounded, it refuses to provide any assurance that it will not sue to enforce them. Accordingly, the Court cannot decline jurisdiction over this actual controversy absent a sound basis for refusal—and Adeia has provided none. *See Capo*, 387 F.3d at 1357.

Adeia suggests, without support, that X has brought this declaratory judgment action "not to resolve the parties' disputes, but to gain leverage in its bid to avoid paying the royalties it owes under the PLA." *See* MTD at 14-15. But the Court should not infer such a "nefarious motive" absent any "affirmative evidence to suggest that [the plaintiff] filed this suit in order to obtain a more favorable bargaining position." *See Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1289 (Fed. Cir. 2007) (finding abuse of discretion by district court in declining to hear declaratory judgment claims). Here, Adeia has provided no evidence supporting its accusations, making dismissal for this reason inappropriate. Nor does Adeia's allegation even make sense. X has no independent reason to want to defend against allegations of patent infringement. If it were not already virtually guaranteed that Adeia would sue it, X would have no reason to initiate a

lawsuit.

Accordingly, Adeia has articulated *no* "sound basis" why the Court should decline jurisdiction over this actual controversy. *See Capo*, 387 F.3d at 1357. Therefore, the Court should hear and resolve X's claims for declaratory judgment.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Adeia's motion to dismiss.

Dated: February 20, 2024

KEKER, VAN NEST & PETERS LLP

By: */s/David Silbert*
DAVID SILBERT
SHARIF E. JACOB
KRISTEN E. LOVIN
TAYLOR REEVES
EMILY A. HASSELBERG
AMRUTHA DORAI

Attorneys for Plaintiff X CORP.