UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| X CORP., <br><br> Plaintiff, <br><br> v. <br><br> ADEIA INC., et al., <br><br> Defendants. | Case No. 23-cv-06151-TLT  (PHK) <br><br> **ORDER GRANTING MOTION TO STAY DISCOVERY** <br><br> **(PUBLIC VERSION)** <br><br> Re: Dkt. 40 |

Plaintiff X Corp. ("X") brings this action against Defendants Adeia Inc., Adeia Media LLC, and Adeia Guides Inc. (collectively, "Adeia") seeking a declaratory judgment of non-infringement of U.S. Patents Nos. 10,694,137; 10,951,563; 11,288,582; and 11,756,071 (collectively, "the Patents-in-Suit"). The case has been referred to the undersigned for resolution of all discovery disputes. *See* Dkt. 43, 47.

Presently before the Court is Adeia's motion to stay discovery pending resolution of its previously filed motion to dismiss. [Dkt. 40]. X opposes the motion to stay discovery [Dkt. 51], and Adeia has replied [Dkt. 53]. Having carefully reviewed the Parties' briefing, the relevant legal authority, and the record in this case, the Court finds the motion suitable for disposition without oral argument. *See* Civil L.R. 7-1(b). The Court therefore **VACATES** the hearing scheduled for April 11, 2024 and **GRANTS** Adeia's motion to stay as discussed further below.[1]

---

[1] Because this Order may set forth information which one or other of the Parties may consider to be Confidential, this Order is filed under seal. The Parties are **ORDERED** to meet and confer promptly regarding whether any reasonable redactions for confidentiality are required for any text in this Order. The Parties shall cooperate reasonably to jointly file, for the Court's consideration, either a Joint Notice that this Order need not be filed under seal in its entirety, or a jointly proposed redacted version of this Order, in either case within five (5) business days of the date of this Order. The

I.  **BACKGROUND**

X, formerly known as Twitter, describes itself as "the leading social media platform for open communication" and "the future state of unlimited activity—centered in audio, video, messaging, payments/banking." [Dkt. 1 at ¶ 23]. Adeia is an intellectual property licensing entity whose patents "purportedly cover all aspects of the entertainment experience, including guidance, discovery, search, recommendations, DVR, VOD, OTT, multi-screen, personalization, data analytics, advertising, imaging, content storage and high-performance computing." *Id.* at ¶ 24.

On April 25, 2019, X (then Twitter) and Adeia (then Rovi) entered into a patent licensing agreement ("PLA") covering a portfolio of patents. *Id.* at ¶ 26; *see* Dkt. 24-5. The PLA granted Twitter "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" license, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to the subject patents for a set-year term ▮▮▮▮▮▮▮▮▮▮. [Dkt. 24-5 at 3-4]. The PLA obligated Twitter to make periodic royalty payments as consideration for the patent licenses. *Id.* at 5. According to X, the Patents-in-Suit, which issued after the PLA came into effect, are covered by the PLA. [Dkt. 35 at 7].

Twitter was privately acquired in October 2022, and at some point thereafter, it stopped making payments under the PLA. [Dkt. 1 at ¶ 28; Dkt. 24-3 at 8]. Adeia and Twitter (at this point known as X) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. [Dkt. 24-4 at ¶ 3].

On August 7, 2023, Adeia filed a breach of contract suit against X in Santa Clara County Superior Court to recover the royalty payments allegedly owed by X under the PLA. [Dkt. 1 at ¶ 27; Dkt. 23-4]. In filing the state court action, Adeia made clear its position that the PLA "has not been terminated, and it remains in effect." [Dkt. 23-4 at ¶ 7]. Claiming that Adeia's state court complaint "improperly disclosed" the PLA's substantive terms, on November 5, 2023, X provided Adeia with notice that X was terminating the PLA. [Dkt. 1 at ¶ 28]. Three weeks later, X commenced this declaratory judgment action in this court.

In this lawsuit, X seeks declarations that it does not infringe the four selected patents which were previously licensed to X by Adeia under the PLA. [Dkt. 1]. On January 16, 2024,

Court will then take appropriate steps regarding filing a public/redacted version of this Order.

2

Adeia filed a motion to dismiss this case in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. [Dkt. 23]. After the motion to dismiss was fully briefed, on March 5, 2024, Adeia filed the instant motion to stay discovery pending resolution of its motion to dismiss. [Dkt. 40]. The motion to stay discovery, along with all other discovery in this case, was referred to the undersigned. [Dkt. 47].

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings when a motion to dismiss is pending. *See, e.g.*, *Meta Platforms, Inc. v. Voyager Labs LTD.*, No. 23-cv-00154-AMO, 2023 WL 4828007, at *1 (N.D. Cal. July 26, 2023). Rule 26(c), however, permits a court to "make an order which justice requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see Clardy v. Gilmore*, 773 F. App'x 958, 959 (9th Cir. 2019) (affirming stay of discovery under Rule 26(c)). Further, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery. . . . The trial court did not abuse its discretion by staying discovery until the immunity issue was decided."). Furthermore, "Magistrate judges have been given broad discretion to stay discovery pending decisions on dispositive motions[.]" *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 220 F.R.D. 349, 351 (N.D. Cal. 2003) (collecting cases).

The Ninth Circuit has not provided a rule or test that district courts must apply to determine if good cause exists to stay discovery pending resolution of a dispositive motion. The Ninth Circuit has, however, identified at least one scenario in which a discovery stay would be appropriate and at least one scenario in which a stay of discovery would not. First, "a district court may stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief." *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (quoting *Wood v. McEwan*, 644 F.2d 797, 801 (9th Cir. 1981)) (alterations omitted). Conversely, the Ninth Circuit has indicated

3

that it would be an abuse of discretion to stay discovery where discovery is needed to litigate the dispositive motion. *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993) ("There is no suggestion . . . that the discovery sought was relevant to whether or not the court has subject matter jurisdiction. Had that been the case, the stay would have been improper."); *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Consistent with the Ninth Circuit's guidance, courts in this District have applied a two-factor test to determine whether discovery should be stayed pending resolution of a motion to dismiss. *See, e.g.*, *Tradin Organics USA LLC v. Terra Nostra Organics, LLC*, No. 23-cv-03373-AMO, 2023 WL 8481814, at *1 (N.D. Cal. Dec. 7, 2023); *DiGiacinto v. RB Health (US) LLC*, No. 22-cv-04690-DMR, 2022 WL 20087460, at *1 (N.D. Cal. Dec. 5, 2022); *Palantir Techs. Inc. v. Abramowitz*, No. 19-cv-06879-BLF, 2020 WL 13548687, at *1 (N.D. Cal. Jan. 30, 2020); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-cv-06370-EJD, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018). First, "a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." *Pac. Lumber*, 220 F.R.D. at 351. Second, "the court must determine whether the pending dispositive motion can be decided absent additional discovery." *Id.* at 352. "If the Court answers these two questions in the affirmative, a protective order may issue. However, if either prong of this test is not established, discovery proceeds." *Id.* "In applying the two-factor test, the court deciding the motion to stay must take a 'preliminary peek' at the merits of the pending dispositive motion to assess whether a stay is warranted." *Tradin Organics*, 2023 WL 8481814, at *1 (quoting *Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 WL 3675214, at *1 (N.D. Cal. Aug. 19, 2021)).

## III. ANALYSIS

**Factor 1: Whether Adeia's Motion to Dismiss is Potentially Dispositive of the Entire Case**

In evaluating whether to exercise the broad discretion to stay discovery, the Court must first consider the extent to which Adeia's motion to dismiss is likely to be dispositive of the entire case. *Pac. Lumber*, 220 F.R.D. at 351. To make this determination, the Court must take a "preliminary peek" at the motion to dismiss. *Tradin Organics*, 2023 WL 8481814, at *1. In reviewing this issue, the Court is mindful that the motion to dismiss has not been referred to the

4

undersigned and will of course be decided by the presiding District Judge.

In this case, Adeia moves for dismissal of X's Complaint, in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. [Dkt. 23]. Specifically, Adeia argues that no real, immediate controversy exists between the Parties regarding the Patents-in-Suit sufficient to sustain declaratory judgment jurisdiction. *Id.* at 6.

Generally, whether a court has subject matter jurisdiction "is a procedural question not unique to patent law," and is therefore governed by regional circuit law. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002). However, "[w]hether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity [of a patent] is governed by Federal Circuit law." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, allows parties to bring declaratory judgment claims against patent holders, where there is an "actual controversy" between the parties sufficient to confer Article III jurisdiction. *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1354 (Fed. Cir. 2013). "The party seeking to establish declaratory judgment jurisdiction bears the burden of demonstrating that an Article III case or controversy exists at the time the claim for declaratory relief is filed." *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 (Fed. Cir. 2012).

To satisfy Article III's case or controversy requirements, a declaratory judgment plaintiff must prove that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech*, 549 U.S. 118, 127 (2007). The controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," such that the dispute is "real and substantial" and "admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* "In determining whether a justiciable controversy is present, the analysis must be calibrated to the particular facts of each case." *Organic Seed Growers*, 718 F.3d at 1355 (quoting *Matthews*, 695 F.3d at 1328).

The plaintiff invoking declaratory judgment jurisdiction for a patent case must point to "some affirmative act by the patentee" that forms the basis for an actual controversy between the parties. *Allied Mineral Prods., Inc. v. Osmi, Inc.*, 870 F.3d 1337, 1339 (Fed. Cir. 2017) (quoting *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007)). In addition to the "affirmative act" by the patentee related to enforcement of the patent, the declaratory judgment plaintiff must also show that there is "meaningful preparation to conduct potentially infringing activity" such that there is sufficient immediacy and reality to the dispute. *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008). While "there is no bright-line rule applicable to all patent cases," the Federal Circuit has held that "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Organic Seed Growers*, 718 F.3d at 1355 (citation omitted).

Knowledge of a patent, alone, is not enough to create a case or controversy sufficient by itself to confer declaratory judgment jurisdiction. "[J]urisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement." *Id.* (quoting *SanDisk*, 480 F.3d at 1380-81). More is required than "a communication from a patent owner to another party, merely identifying its patent and the other's product line," though how much more is determined on a "case-by-case analysis." *3M*, 673 F.3d at 1378-79.

In analyzing whether the patentee has taken an affirmative act sufficient to support a finding of declaratory judgment jurisdiction, courts in this District consider thirteen non-exclusive factors: (1) the strength of threatening language in communications between the parties; (2) the depth and extent of infringement analysis conducted by the patent holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of times the patent holder has contacted the alleged infringer; (8) whether the patent holder is a holding company with no income other than enforcing patent rights; (9) whether the patent holder refused to give assurance

6

it will not enforce the patent; (10) whether the patent holder has identified a specific patent and specific infringing products; (11) the extent of the patent holder's familiarity with the product prior to suit; (12) the length of time that transpired after the patent holder asserted infringement; and (13) whether communications initiated by the plaintiff appear as an attempt to create a controversy.  *See, e.g.*, *Apple Inc. v. VolP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 967-68 (N.D. Cal. 2020); *ActiveVideo Networks, Inc. v. Trans Video Elec., Ltd.*, 975 F. Supp. 2d 1083, 1087-88 (N.D. Cal. 2013).  The Court is cognizant that these factors are non-exclusive because, under *MedImmune*, declaratory judgment jurisdiction is analyzed in view of the totality of the circumstances to determine whether, in view of all the circumstances of a particular case, there is a substantial controversy between the parties, having adverse legal interests, of sufficient immediacy and reality to warrant relief.  549 U.S. at 127.

Applying these thirteen factors to the case at hand, the Court concludes that Adeia's motion to dismiss presents strong and meritorious arguments for dismissal of X's declaratory judgment claims.  Adeia argues—with support in the record and in light of all the circumstances—that X cannot meet the burden to show an affirmative act by Adeia related to the Patents-in-Suit sufficient to confer declaratory judgment jurisdiction.  Most notably, there is no allegation or evidence suggesting that Adeia ever communicated with X regarding the Patents-in-Suit prior to filing this lawsuit.  *See generally* Dkt. 1; *see also* Dkt. 24-4 at ¶¶ 4-6.  Indeed, there is also no allegation or evidence suggesting that Adeia ever accused X of infringing the four patents at issue in this case.  *Id.*  Because there were no pre-suit communications about the Patents-in-Suit, there is no allegation or evidence suggesting that the Parties ever exchanged claims charts or engaged in discussions about any infringement analysis.  *Id.*

These circumstances and facts all implicate most of the factors relevant to determining declaratory judgment jurisdiction, where the lack of such communications and exchanges about the Patents-in-Suit lead to the following conclusions based on the facts here:

the first factor ("strength of threatening language") is lacking because here there was no language or pre-suit communication at all concerning the four Patents-in-Suit;

the second factor ("depth and extent of infringement analysis") is lacking because here

7

there is no such analysis;

the third factor ("whether the patent holder imposed a deadline to respond") is absent because there were no pre-suit discussions at all and thus no deadlines to impose for a response;

the sixth factor ("whether the patent holder's threats have induced the alleged infringer to change its behavior") is absent because here there were no threats and thus no change in behavior that would have been caused by any threats;

the seventh factor ("number of times the patent holder has contacted the alleged infringer") is absent because here there were zero contacts regarding the Patents-in-Suit;

the ninth factor ("whether the patent holder refused to give assurance it will not enforce the patent") is absent because here there were no discussions about the patents at all and thus no opportunity to ask for and no occasion to refuse any assurances;

the tenth factor ("whether the patent holder has identified a specific patent and specific infringing products") is absent because here no such identifications occurred;

the twelfth factor ("length of time that transpired after the patent holder asserted infringement") is absent because here there never was a pre-suit assertion of infringement and thus no time to transpire between communications; and

the thirteenth factor ("communications initiated by the plaintiff appear as an attempt to create a controversy") is lacking because again here there were no communications about the Patents-in-Suit at all.

The absence of all these nine (out of the thirteen) factors weighs heavily against finding subject matter jurisdiction.

Furthermore, there is no allegation or evidence suggesting that Adeia has ever tried to enforce the Patents-in-Suit against not only X but even against any other parties. This implicates the fifth factor ("history of enforcing the patent at issue") because here there is no such history. *Cf. Apple*, 506 F. Supp. 3d at 968 (finding "the extensive litigation campaign" undertaken by the patent holder against the declaratory judgment plaintiff on related patents to be an affirmative act sufficient to confer subject matter jurisdiction). Thus, the absence of this factor further weighs against finding jurisdiction.

8

The eleventh factor ("extent of patent holder's familiarity with the product prior to suit") is at best neutral. Because the record indicates that Adeia engaged in pre-suit licensing negotiations for the PLA (prior to issuance of the Patents-in-Suit), there is at least an inference that Adeia was familiar with X's products and services at least as of the time of the negotiations for the PLA in 2019. [Dkt. 1 at ¶¶ 25-26]. However, there is no allegation or evidence that Adeia is familiar with X's current products or services, and certainly no allegation or evidence that Adeia is familiar with X's current products or services at a level of detail which would be relevant to the alleged inventions claimed by the four Patents-in-Suit. *Apple*, 506 F. Supp. 3d at 968.

The Court recognizes that the eighth factor ("whether the patent holder is a holding company with no income other than enforcing patent rights") militates in favor of declaratory judgment jurisdiction. Here, Adeia's business model depends almost entirely (if not entirely) on revenue generated from licensing and enforcing patents. [Dkt. 1 at ¶¶ 24, 32-33 (citing Adeia's 10-K)].

The Parties devote substantial argument to the fourth factor ("any prior litigation between the parties"). *Apple*, 506 F. Supp. 3d at 967. Here, there is no prior patent infringement litigation between the Parties. Rather, X argues that the pending state court action brought by Adeia for breach of the PLA is "a quintessential 'affirmative act' that creates declaratory judgment jurisdiction." [Dkt. 35 at 10]. According to X, because Adeia has sued to enforce the PLA, and because the Patents-in-Suit are covered by the PLA, Adeia has allegedly put X on notice of Adeia's intent to enforce the Patents-in-Suit. [Dkt. 51 at 10-11].

X's argument overlooks the totality of the circumstances regarding the PLA itself. ▌
▌
▌ In state court, Adeia alleges that X has not paid royalties owed under the PLA, but Adeia does not allege (nor does X argue here) ▌
▌. There is no allegation that ▌
▌
▌. Furthermore, Adeia has apparently taken the position in the state court action

9

that the PLA remained in effect at least until March 31, 2024. [Dkt. 23-4 at ¶ 7]. The Court recognizes that X sent a termination letter on November 5, 2023, asserting that X was terminating the PLA. [Dkt. 1 at ¶ 28]. On the current record, it is unclear whether that termination was effective. If Adeia is correct that the license terms remained in effect until March 31, 2024, then by definition there could be no liability for any alleged infringement at the time the instant lawsuit was filed, because a license grant exhausts the patent rights and thus the doctrine of patent exhaustion would bar infringement claims against any accused X products which are sold under a valid license. *High Point SARL v. T-Mobile USA, Inc.*, 640 F. App'x. 917, 921-22 (Fed. Cir. 2016).

Therefore, the fact that Adeia has sued to recover royalties allegedly owed under the PLA is not sufficiently immediate or real to create declaratory judgment jurisdiction as to the four Patents-in-Suit. *See Broadband iTV, Inc. v. OpenTV, Inc.*, No. 17-cv-06647-SK, 2018 WL 4927935, at *5 (N.D. Cal. Feb. 22, 2018) (finding patentee's suit for breach of licensing agreement covering numerous patents insufficient to create declaratory judgment jurisdiction as to specific patents).

In arguing that the state court action filed by Adeia is sufficient to create declaratory judgment jurisdiction between the Parties here, X cites *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874 (Fed. Cir. 1983), as well as several nonbinding decisions from outside of this District—*Baseload Energy, Inc. v. Roberts*, No. 08-1838 (PLF), 2012 WL 13047523 (D.D.C. Mar. 27, 2012); *Hero Nutritionals, Inc. v. Vitastix, Inc.*, No. SACV 09-00927 DMG (MLGx), 2010 WL 11580048 (C.D. Cal. Apr. 23, 2010); *Beverly Hills Teddy Bear Co. v. GennComm, LLC*, No. CV 20-02849-CJC (JEMx), 2020 WL 7049537 (C.D. Cal. Oct. 1, 2020); and *C-Innovation, LLC v. Trendsetter Eng'g, Inc.*, No. 20-2631, 2021 WL 253858 (E.D. La. Jan. 26, 2021). However, these cases are distinguishable from the case at hand in two major respects. First, each of the cases cited by X involved patents that were specifically identified and key to the underlying licensing agreements. *See C.R. Bard*, 716 F.2d at 875 (exclusive license to single patent); *Baseload*, 2012 WL 13047523, at *1-2 (settlement agreement for a single key patent); *Hero Nutritionals*, 2010 WL 11580048, at *1, 4 ("Plaintiff entered into the License Agreement in response to Defendant's threat that

1   Plaintiff's 'pixi-stick' product infringed the [patent-in-suit]."); *Beverly Hills Teddy Bear*, 2020
2   WL 7049537, at *1 (license granting right "to make, use, and sell the subject matter of all patents
3   and patent applications on the ITEM . . . as more fully detailed in Exhibit A"); *C-Innovation*, 2021
4   WL 253858, at *3 (non-exclusive license to single patent). Here, by contrast, the Patents-in-Suit
5   are neither specifically identified nor alleged to be key to the PLA, which is itself a ▮▮▮▮
6   ▮▮▮▮▮▮▮▮▮▮▮▮▮ (in addition to the Patents-in-Suit, which had not issued as
7   of the date of the PLA in any event).
8       Further, in each of the cases cited by X, the underlying license agreement expressly linked
9   unpaid royalties with breach of the agreement. *See, e.g.*, *Beverly Hills Teddy Bear*, 2020 WL
10  7049537, at *1 ("The Agreement obligated [licensee] to make royalty payments to [licensor] based
11  on sales of the ITEM. If [licensee] failed to make payment, [licensor] was authorized to terminate
12  the Agreement.") (internal citation omitted). As discussed above, there is no allegation in this case
13  that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15  ▮▮.
16      Here, because the PLA covers many patents in addition to the Patents-in-Suit, there is
17  insufficient immediacy of an infringement lawsuit as to those four specific patents simply because
18  the PLA as a whole is being enforced in the state court action. Accordingly, the fourth factor
19  ("prior litigation between the parties") does not sufficiently strengthen X's position as to subject
20  matter jurisdiction and, at best, is neutral to the declaratory judgment analysis.
21      Thus, here where most of the factors weigh against jurisdiction, where two factors are
22  neutral at best, and where only one factor weighs in favor of declaratory judgment jurisdiction,
23  there is ample grounds to find that Adeia's motion to dismiss is (at least) potentially dispositive of
24  the entire case. Looking beyond the factors alone and taking into account the totality of the
25  circumstances, Adeia's motion to dismiss presents strong arguments that the case lacks a
26  substantial controversy of sufficient immediacy and reality to warrant declaratory judgment
27  jurisdiction.
28      Further, the Court finds that Adeia's motion to dismiss presents strong and meritorious

11

arguments that the Parties lack sufficient "adverse legal interests" with respect to the four Patents-in-Suit to create declaratory judgment jurisdiction. *MedImmune*, 549 U.S. at 127. As discussed above, there is no allegation or evidence suggesting that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See In re Qualcomm Litig.*, No. 17-cv-00108-GPC-MDD, 2017 WL 5985598, at *22 (S.D. Cal. Nov. 8, 2017) (finding declaratory judgment plaintiff failed to meet their burden to show how "a declaratory judgment as to only nine patents in a portfolio of thousands" would finally and conclusively resolve the parties' underlying dispute over royalty payments where such payments were not conditioned on whether the subject patents were valid or infringed).

As a final matter, X argues that Adeia's motion to dismiss is not "truly dispositive," because even if the motion to dismiss were granted in full, there is a possibility that X would be granted leave to amend. [Dkt. 51 at 11]. The Court's inquiry on the instant motion, however, is not whether the motion to dismiss is "truly dispositive," but instead, whether the motion to dismiss is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." *Pac. Lumber*, 220 F.R.D. at 352. As the discussion and analysis of all the totality of circumstances above demonstrates, Adeia's motion to dismiss, at a minimum, meets the threshold of being potentially dispositive of the entire case.

Accordingly, because Adeia's motion to dismiss is potentially dispositive of the entire case, the Court finds that the first prong of the analysis on whether to stay discovery pending that motion is met.

**Factor 2: Whether Adeia's Motion to Dismiss Can be Decided Absent Additional Discovery**

In evaluating whether a stay is appropriate, the Court next considers whether Adeia's pending motion to dismiss can be decided without additional discovery. *Pac. Lumber*, 220 F.R.D. at 352. Based on the record presented, the Court concludes that the motion to dismiss can be decided without additional discovery. The motion to dismiss is fully briefed, and X filed its opposition to the motion to dismiss without seeking discovery. Here, on this motion to stay, X makes no argument that additional discovery is required to resolve the pending motion to dismiss. To the contrary, X concedes that it "did not *need* to seek discovery to establish subject-matter

12

jurisdiction." [Dkt. 51 at 12-13 (emphasis in original)].

In discussing the second factor, X argues that it has served "limited discovery requests" which "implicate and are relevant to" the arguments raised in the motion to dismiss. *Id.* However, X does not expressly argue or suggest alternate relief in the form of a partial stay of discovery (*i.e.*, that only this limited discovery should proceed in order to allow X to fully oppose the motion to dismiss, while all other discovery is stayed). X argues instead that this limited discovery is sufficient to deny the stay of all discovery.

In support of this argument, X argues that this limited discovery is directed at "whether or not Section 2.2 of the PLA was triggered" and thus ▮▮▮▮ which are ▮▮▮▮ patents covered by the PLA. [Dkt. 51 at 13]. X argues that this discovery is therefore relevant to rebutting Adeia's contention that the license still remains in effect and, ultimately, Adeia's contentions that there exists no case or controversy between the Parties because that license remains in effect to remove any adverse legal interests or potential infringement claims concerning the Patents-in-Suit. *Id.* X's arguments are insufficient to justify denial of the stay of discovery and mischaracterize the PLA.

First, as noted, X does not expressly argue that only a partial stay should be entered and has presented no proposed Order allowing only this limited discovery to proceed.

Second, X's discovery is admittedly directed to Section 2.2 of the PLA ▮▮▮▮ *see, e.g., Scramoge Tech. Ltd. v. Apple, Inc.*, 669 F. Supp. 3d 826, ▮ (N.D. Cal. 2023)). [Dkt. 24-5 at 4]. X either ignores or misleadingly omits that Section 2.1 of the PLA is the actual clause containing the license grant under the licensed patents during the term of the PLA, not Section 2.2. *Id.* at 3-4. Whether a license was granted ▮▮▮▮ . *Id.* Indeed, Section 2.2 specifically states that ▮▮▮▮

13

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 4. And under Section 2.2, ▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  *Id.* Notably, there is no allegation that any of the four Patents-in-Suit ▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and no basis to believe that
5  Section 2.2's provisions impact the license grant under those four patents pursuant to Section 2.1
6  of the PLA.
7      Indeed, X argues that Adeia was formerly known as Rovi Guides, Inc. (and is thus a Rovi-
8  related entity) and that Adeia is the current assignee or owner of the four Patents-in-Suit. [Dkt. 1
9  at 9-10]. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Dkt. 24-5 at 4]. In light of X's admissions in the Complaint,
12 there is no allegation that any of the four Patents-in-Suit were ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and thus no basis to believe that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮ were ever implicated with regard to the Patents-in-Suit. [Dkt. 24-5 at 4].
15     In light of the above, the limited discovery X propounded—which, by X's own admission,
16 is directed to Section 2.2 of the PLA—appears unnecessary to resolve the motion to dismiss. This
17 suggests to the Court why X nowhere expressly requests that its limited discovery should be
18 exempt from any stay. While X's brief cites case law that held that a partial stay should be entered
19 to allow discovery shown to be relevant and necessary to oppose the motion to dismiss to proceed,
20 X appears only to vaguely imply through inartful drafting that a complete stay should not be
21 entered and, perhaps by negative implication, that only a partial stay of discovery should be
22 entered. *See* Dkt. 51 at 13 ("Given that X's discovery requests specifically relate to Adeia's
23 arguments in support of its motion to dismiss, a stay of all discovery would be inappropriate."). If
24 X intended to concede that a stay of some but not all discovery should be entered, then it was
25 incumbent on X to make that position plain. By arguing all-or-nothing that this limited discovery
26 justified denying the stay of all discovery, X chose to assume the risk that the Court would reject
27 X's all-or-nothing approach on these issues.
28     Even if there were a request for a partial stay to allow X's limited discovery to proceed, the

14

record presented demonstrates (as detailed above) that none of that limited discovery appears to be important or necessary, much less relevant, to opposing the motion to dismiss since none of the discovery is directed to Section 2.1 of the PLA, which is the actual clause granting the license under the four Patents-in-Suit during the relevant period. Indeed, as indicated, X has taken the opposite position, *i.e.*, that any discovery is not necessary. Accordingly, the issue that the Court must evaluate on the instant motion (whether the motion to dismiss can be decided without additional discovery) must be resolved in favor of Adeia. *Pac. Lumber*, 220 F.R.D. at 352. On the record presented on the instant motion, X has not demonstrated that additional discovery is needed, or important, or even relevant to resolve the pending motion to dismiss. Accordingly, the Court finds that the second factor for whether to stay discovery is satisfied. And, taking into consideration the analysis above, because both factors are met, the Court finds good cause to stay discovery pending resolution of the motion to dismiss.

Beyond the two-factor test for a stay of discovery, the Parties argue that other miscellaneous factors should apply here (such as the Court's discretion, judicial economy, and issues related to alleged forum shopping). First, none of those issues are dispositive of the issue of whether or not to stay discovery alone, and are not sufficient to ignore the conclusion above that the two-factor test for a stay under *Pacific Lumber* (and similar cases) is satisfied.

Second, several of these other factors support the exercise of this Court's inherent and wide discretion to stay discovery pending resolution of Adeia's motion to dismiss. As noted, the motion to dismiss implicates subject matter jurisdiction and is at least potentially dispositive of the entire case. *See TradeBay, LLC v. Ebay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011) (observing that courts commonly stay discovery when a potentially dispositive motion challenging jurisdiction is pending). As such, requiring the Parties to engage in full discovery at this time would potentially subject not just Adeia, but also X, to burden and expense which might otherwise be avoided. As noted, the Parties are currently litigating and engaged in discovery in the state court action and a stay of discovery here allows the Parties to focus their discovery efforts and resources in that action—and importantly avoids the potential for duplicative or inconsistent positions on discovery issues to be taken between that action and this case.

15

Further, judicial economy and court resources would be wasted if the Court allowed full merits discovery to proceed during the interim time until the motion to dismiss is decided.  As the Court is well aware through long experience, patent cases can often involve significant and hotly contested disputes over merits discovery.  Here, there is no alleged prejudice identified by a stay of discovery—the Parties are not competitors in the market (since Adeia sells no products or services in competition with X) and no damages are sought by this declaratory judgment action.  Further, whether or not there has been any forum shopping motivating (even in part) the filing of this action is not a sufficient factor under applicable legal standards for deciding whether discovery should be stayed.  In sum, all these miscellaneous factors argued by the Parties are fundamentally insufficient to alter the legal analysis regarding stay of discovery under the applicable legal standards.

## IV.  CONCLUSION

In light of the foregoing, the Court finds in its discretion that both Party and Judicial resources will be most efficiently preserved if discovery is stayed pending resolution of Adeia's motion to dismiss for lack of subject matter jurisdiction.  Accordingly, **IT IS ORDERED THAT:**

1. The Motion to Stay Discovery [Dkt. 40] is **GRANTED**.
2. Discovery in this matter is **STAYED** until further Order by this Court and pending resolution of the Motion to Dismiss [Dkt. 23].
3. The Parties are **ORDERED** to file a Joint Status Report within ten (10) business days of the issuance of a ruling on the Motion to Dismiss [Dkt. 23] to report on that ruling's impact on the case and, if any part of the case remains, to advise the Court as to the status of the case, the status of discovery in the state court action, and the Parties' respective views on whether and how discovery, if any, should then proceed in this action in a manner that is efficient, productive, and consistent with discovery proceedings in the state

court action.

**IT IS SO ORDERED.**

Dated: April 10, 2024

_____
PETER H. KANG
United States Magistrate Judge

17